STATE OF NORTH CAROLINA v. WILLIAM RASHAD LUCAS

No. 278PA00

(Filed 20 July 2001)

### 1. Aiding and Abetting— instructions—specific intent

The Court of Appeals erred by holding improper a trial court's instructions on aiding and abetting a kidnapping and burglary where the offense occurred when *State v. Blankenship,* 337 N.C. 543, was in effect and the court instructed the jury that it had

to find that defendant "knowingly encouraged or aided" in the burglary and kidnapping in order to convict. These instructions are similar to those approved in *State v. Allen*, 339 N.C. 545, and adequately convey the requirement that defendant had to have the specific intent to aid in the underlying offenses.

## 2. Burglary— aiding and abetting—sufficiency of evidence— underlying murder—intent

The trial court properly denied defendant's motion to dismiss a charge of first-degree burglary by aiding and abetting where defendant contended that there was insufficient evidence that he possessed the specific intent to aid the principal (Lawrence) in committing the murder underlying the burglary, but defendant mistakenly relied upon his own testimony. Taken in the light most favorable to the State, the evidence showed that defendant was a friend of Lawrence and spent the day with him at a cookout; defendant, clad in black, accompanied Lawrence that night to the home of the victim (McLean), arming himself with a sawed-off shotgun after seeing that Lawrence was carrying a pistol; defendant stood by with his shotgun at McLean's home while Lawrence argued with his former girlfriend, Morrison; defendant followed Lawrence into McLean's home and stood inside the doorway with his shotgun while Lawrence shot McLean numerous times; defendant drove the vehicle away from the scene with Lawrence and the abducted Morrison, remarking that Lawrence should have killed Morrison also; defendant hid the murder weapon; and a search of defendant's vehicle yielded several nine-millimeter rounds and twenty-gauge shotgun shells.

## 3. Kidnapping— aiding and abetting—intent—sufficiency of evidence

The trial court properly denied defendant's motion to dismiss a charge of kidnapping by aiding and abetting where, although defendant argued that the evidence at most showed that he assisted in escorting the victim to a hotel for a consensual sexual encounter, a reasonable juror could have inferred that defendant knew a sexual assault was in the offing; testimony established that the victim, barely dressed and in obvious distress, was removed at gunpoint from her home immediately after she saw her boyfriend murdered and was then kept in the vehicle while the principal (Lawrence) checked in at the hotel; and the victim noticed soon after that a loaded shotgun had been brought into the hotel room. Defendant's behavior both encouraged and pro-

tected Lawrence and also ensured that others would not witness or hinder the commission of the rape.

**4. Kidnapping— instructions—theory not alleged in indictment—not prejudicial or plain error**

The trial court erred in a kidnapping prosecution by instructing the jury on removal when the indictment alleged only confinement. However, the erroneous instructions did not constitute prejudicial or plain error where the court's instructions on purpose did not differ from that listed in the indictment, the evidence of confinement, restraint and removal was compelling, and a different result would not have been reached by the jury had the trial court instructed on confinement rather than removal.

**5. Aiding and Abetting— instructions—mere presence**

There was no plain error in a prosecution for first-degree burglary and first-degree kidnapping as an aider and abettor where defendant contends that the court should have instructed on "mere presence." There is no obligation to instruct on mere presence when the evidence is undisputed that defendant participated in the crime and was not just a bystander. Moreover, read as a whole, the instructions adequately conveyed the principle that defendant's presence alone is not sufficient to support a conviction for burglary or kidnapping as an aider and abettor.

**6. Sentencing— firearms enhancement—determination of maximum sentence**

A first-degree burglary and kidnapping defendant's motion for appropriate relief in the Supreme Court was granted, his sentences were vacated, and the matter was remanded where the trial court's application of the firearms enhancement provision of N.C.G.S. § 15A-1340.16A added sixty months to the longest minimum sentence, resulting in the addition of at least sixty months to the corresponding statutory maximum sentence and an enhanced maximum exceeding that set out in the sentencing charts for a defendant in the highest criminal history category convicted of an aggravated offense. In every instance where the State seeks an enhanced sentence pursuant to N.C.G.S. § 15A-1340.16A, it must allege the statutory factors supporting the enhancement in the indictment, which may be the same indictment that charges the underlying offense, and submit those factors to the jury. Although this defendant's prior record level and actual sentencing range was toward the low end of the sen-

tencing tables, the statutory maximum is determined by assuming that the offense was aggravated and that defendant had a criminal history level of VI. It was noted that the General Assembly intended that the trial court add 60 months to the minimum sentence and then refer to the sentencing charts to determine the corresponding maximum sentence.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 138 N.C. App. 226, 530 S.E.2d 602 (2000), finding error in judgments entered 24 February 1998 by Bowen, J., in Superior Court, Harnett County, and ordering a new trial. On 12 July 2000, the Supreme Court allowed defendant's conditional petition for discretionary review as to additional issues. On 5 October 2000, the Supreme Court agreed to hear defendant's motion for appropriate relief and ordered both parties to file supplemental briefs. Heard in the Supreme Court 14 February 2001.

*Roy A. Cooper, Attorney General, by K.D. Sturgis and Robert C. Montgomery, Assistant Attorneys General, for the State-appellant and -appellee.*

*Staples Hughes, Appellate Defender, by Danielle M. Carman, Assistant Appellate Defender, for defendant-appellant and -appellee.*

EDMUNDS, Justice.

Defendant William Rashad Lucas was indicted for first-degree murder, first-degree burglary, first-degree kidnapping, possession of a weapon of mass death and destruction, conspiracy to commit murder and conspiracy to commit kidnapping. He was tried before a jury at the 16 February 1998 Criminal Session of Superior Court, Harnett County. On 24 February 1998, the jury returned verdicts convicting defendant of first-degree burglary as an aider and abettor, second-degree kidnapping as an aider and abettor, and possession of a weapon of mass destruction, while acquitting him of first-degree murder and the conspiracy charges. The trial court sentenced defendant to consecutive terms of imprisonment of 124 to 146 months for first-degree burglary, 85 to 99 months for second-degree kidnapping, and 16 to 20 months for possession of a weapon of mass death and destruction.

Defendant appealed to the North Carolina Court of Appeals, which ordered a new trial based on the trial court's failure to convey

adequately the concept of specific intent necessary to support con-
victions of first-degree burglary and second-degree kidnapping under
the theory of aiding and abetting. On 12 July 2000, we allowed both
the State's petition for discretionary review and defendant's condi-
tional petition for discretionary review as to additional issues, and on
5 October 2000, we agreed to consider defendant's motion for appro-
priate relief. For the reasons that follow, we reverse the Court of
Appeals as to the issue raised by the State. As to the additional issues
raised by defendant in his conditional petition for discretionary
review, we find no error. Finally, we grant defendant a new sentenc-
ing hearing on the firearm enhancement issue raised in defendant's
motion for appropriate relief.

At defendant's trial, the State's evidence showed that on 18
January 1997, Dale Jerome McLean; his girlfriend, Gwendolyn
Annette Morrison; and his two children, Chastity Latrice McLean and
Dale Jerome McLean, Jr., were at McLean's home in Harnett County,
North Carolina. Upon hearing a knock on the back door at approxi-
mately 8:00 p.m., McLean, who was in the back bedroom with
Morrison, looked out the window and saw Jimmy Wayne Lawrence,
Morrison's former boyfriend. Morrison told McLean that she would
"handle it." Wearing only a coat covering a nightgown and slippers,
Morrison stepped outside to speak with Lawrence. Lawrence asked
Morrison to leave with him, and when she refused, he pointed a nine-
millimeter pistol at her. Morrison turned around and saw defendant
standing nearby, holding a sawed-off shotgun across his body.
Morrison told Lawrence that she "didn't want no trouble" and that
she would get dressed and go with him.

Morrison went back into McLean's home. As she was closing the
door, Lawrence "busted his way through" the doorway and pushed
Morrison out of the way. When McLean emerged from the bedroom,
Lawrence aimed his pistol at him. Morrison struggled with Lawrence,
and Lawrence began shooting. The pistol at first misfired, but
Lawrence's second shot struck McLean in the head. McLean fell, and
Lawrence fired eight more shots at him from close range. Morrison
saw defendant standing inside the doorway of the home, holding
the shotgun.

Lawrence then stated to Morrison, "Come on. Let's go." When
Morrison refused, Lawrence threatened to kill her if she did not leave
with him, then grabbed her and took her to his vehicle. She was still
wearing only an overcoat over a nightgown and slippers. Lawrence
forced Morrison to sit in the back of the vehicle while he sat in the

front passenger seat and defendant drove. As they were driving, Lawrence stated to defendant, "Slow down. We don't want to make it look like we're doing something wrong." Defendant later commented to Lawrence, "Jimmy, you should have killed her too because she's going to tell it." They stopped at the home of Lawrence's father where Lawrence went inside. Morrison remained in the car as defendant stood behind the vehicle. Lawrence emerged from his father's house, spoke to defendant briefly, then made Morrison move from Lawrence's car to the back seat of defendant's vehicle. When they left Lawrence's father's house, Lawrence again sat in the front passenger seat while defendant drove.

They arrived at a Comfort Inn, where Lawrence checked in while defendant and Morrison remained in the vehicle. The three then entered the rented room, and defendant's shotgun was placed on the bed. After Lawrence and defendant talked briefly, defendant left for about thirty-five to forty minutes. At some point that evening, Lawrence raped Morrison at the Comfort Inn. Although the sequence of events is not clear from the record, it appears that the rape occurred during defendant's absence. When defendant returned, he brought clothes for Morrison. After talking to Lawrence, defendant departed again. Thereafter, Lawrence telephoned his father to pick him up. Once Lawrence left the room, Morrison called the police.

. Chastity, the victim's daughter, corroborated Morrison's version of events. She testified that defendant was dressed entirely in black, held a long gun, and was "half inside and half outside" McLean's house during the shooting. She identified defendant in the courtroom as the man present at the scene of the murder, and she testified that Lawrence "snatched" Morrison when he was leaving and that Morrison was "fussing" as she was forced to leave. Chastity telephoned her grandmother, Eloise McLean Swann, after Lawrence, defendant and Morrison left McLean's residence and reported that her father had been shot. Swann arrived at McLean's home shortly thereafter, and when Swann asked Chastity who was responsible, Chastity told her that "it was two men." Swann's testimony at trial corroborated Chastity.

North Carolina State Bureau of Investigation Agent Sam Pennica photographed the scene of the shooting and collected cartridge cases and projectiles from the area around and under McLean's body. After processing the crime scene, Agent Pennica went to the Comfort Inn and determined that Lawrence had registered there. By that time,

Lawrence was in custody at the Lee County Sheriff's Department where he signed a waiver of rights form and consented to a search of the hotel room. Agent Pennica conducted the search and found a loaded sawed-off twenty-gauge shotgun under the box springs of one of the beds.

Agent Pennica then assisted other investigators in interviewing Lawrence, who had been moved to the Harnett County Sheriff's Department. As a result of the questioning, Lawrence identified defendant as the second man at the crime scene. In addition, North Carolina State Bureau of Investigation Special Agent Wayne Truax obtained the telephone records from the room registered to Lawrence at the Comfort Inn and determined that a call had been made from that room to defendant. Defendant subsequently was arrested at the residence of his girlfriend and transported to the Sanford Police Department where he waived his *Miranda* rights and consented to a search of his vehicle. Defendant gave a statement to Agent Pennica in which he admitted traveling with Lawrence to the victim's home, but he denied knowing why Lawrence was going there or what Lawrence planned to do. Defendant also denied having a weapon while at the home and claimed that he did not know what happened inside. During this interrogation, defendant revealed that the nine-millimeter handgun used by Lawrence to kill McLean was at his (defendant's) girlfriend's house. Agent Truax searched defendant's vehicle and recovered a pager along with several nine-millimeter rounds and twenty-gauge shotgun shells.

Tomeka Goins, defendant's girlfriend, stated that on the evening in question, defendant came to her house in an agitated state and said that "Jimmy was in trouble." While there, defendant received a page from Lawrence, then left with some of Goins' clothes. When he returned, defendant hid a nine-millimeter pistol at the foot of Goins' bed. She subsequently turned the weapon over to the investigators.

North Carolina State Bureau of Investigation Special Agent Thomas Trochum testified that ten shell casings retrieved from the crime scene had been fired in the nine-millimeter pistol recovered from Goins' home. Pathologist Keith Lehman found seven gunshot wounds to McLean's head and two gunshot wounds to his right arm. He concluded that the cause of death was gunshot wounds to the head and added that gunpowder markings on McLean's face indicated that bullets were fired from a distance between one-half inch to three and one-half feet.

Three witnesses testified during defendant's case in chief. Linda Dowdy, Lawrence's aunt, testified that defendant was at a cookout on 18 January 1997 and left with Lawrence in Lawrence's vehicle. She also testified that she had purchased the nine-millimeter pistol used in the shootings from a pawn shop and had given it to Lawrence.

Defendant testified in his own behalf. He stated that he spent 18 January 1997 with Lawrence at a cookout at Lawrence's father's house. While there, Lawrence received three pages from a female. The female apparently was Morrison, who testified that she paged defendant several times earlier in the day. Lawrence called the female in response to the pages, then asked defendant to drive him home. After arriving at Lawrence's home, Lawrence asked defendant to ride with him to the house of a female with whom he was "supposed to get a room." Defendant noticed that Lawrence "wasn't acting right" and had a gun. When defendant asked Lawrence why he had a weapon with him, Lawrence responded, "[Y]ou never know. Anything can happen." Defendant then obtained his shotgun and placed it on the floor of Lawrence's vehicle.

Lawrence drove to a house near the woods and told defendant to get out. Defendant stood off to the side by himself with his shotgun while Lawrence knocked on the door. Morrison came out and spoke with Lawrence for approximately five minutes. Defendant "played with the dirt" during this time. The conversation became heated, and defendant heard Morrison tell Lawrence that she would leave with him. Morrison reentered the house, and Lawrence followed her. Defendant did not see anything until he heard the first shot. He then ran to the house, looked through the closed screen door, and saw Lawrence and Morrison "tangling with each other." Defendant heard more shots as he ran back to Lawrence's vehicle where he "froze." Lawrence and Morrison emerged from the house, and Lawrence told defendant to drive because he wanted to talk with Morrison. Lawrence gave defendant directions to Lawrence's father's home. When they arrived, defendant was ready to leave, but Lawrence "begg[ed]" defendant to wait and give him a ride to the hotel. After Lawrence spent approximately five minutes in his father's house, he, defendant and Morrison changed cars and left in defendant's vehicle.

Lawrence told defendant to take him to the Comfort Inn in Sanford, North Carolina, where Lawrence checked in and asked defendant to return his pistol to his father's house. Defendant hid the

pistol in the back of his car, then left. Ten minutes later, in response to a page, defendant called Lawrence from his girlfriend's house. When Lawrence "begg[ed]" him to bring some clothes to the hotel room, defendant took some of his girlfriend's clothes to the Comfort Inn, then returned to his girlfriend's home. Defendant claimed that he was unaware of what happened to his shotgun after he initially arrived at the hotel and that he never entered the room registered to Lawrence. On cross-examination, defendant admitted that the last time he saw the nine-millimeter pistol was at his girlfriend's house.

Finally, forensic psychologist James H. Hilkey testified on defendant's behalf. Dr. Hilkey diagnosed defendant as suffering from generalized anxiety disorder. He also discerned in defendant a pattern consistent with depressive personality disorder and traits characteristic of dependent personality disorder. He testified that defendant functions psychologically as a twelve-, thirteen- or fourteen-year old, especially in stressful situations, and is particularly susceptible to peer pressure. He believed the shots fired by Lawrence represented a pivotal point beyond which defendant found it difficult to extricate himself.

## STATE'S PETITION FOR DISCRETIONARY REVIEW

[1] We first address the single issue raised by the State. At trial, defendant requested the trial court to instruct the jury that, in order to convict him under the theory of aiding and abetting Lawrence, the jury must find defendant had the specific intent to commit the underlying offenses of kidnapping and burglary. As detailed below, the trial court instead instructed that, in order to convict defendant as an aider and abettor, the jury had to find he "knowingly encouraged or aided" Lawrence in the burglary and "knowingly encouraged and aided" Lawrence in the kidnapping. The Court of Appeals held that these instructions failed to convey the requisite intent and ordered a new trial.

At the close of all the evidence, defendant made a written request for the following instruction on specific intent:

> That as to the charges of conspiracy, kidnapping and burglary and murder under all theories for any offense, that all references to the defendant and/or Jimmy Lawrence intending to commit the felonies be stricken and that the following be inserted:

That the defendant, William Rashad Lucas, intended to commit (the felony). That is he had the specific intent to (name elements of felony). It is not sufficient that the State prove that Jimmy Lawrence intentionally committed (the felony); rather the State must prove beyond a reasonable doubt that William Rashad Lucas, himself, had a specific intent to commit (the felony).

The trial court denied defendant's request and instead instructed the jury in pertinent part:

Now, as to aiding and abetting in the charge of burglary and first- or second-degree kidnapping, a person may be guilty of a crime although he personally does not do any of the acts necessary to constitute that crime. A person who aids and abets another to commit a crime is guilty of that crime. You must clearly understand that if he does aid and abet, he is guilty of the crime just as if he had personally done all the acts necessary to constitute the crime. For you to find the Defendant guilty of another crime because of aiding and abetting the State must prove generally three elements beyond a reasonable doubt: First, that the crime was committed by some other person, in this case Jimmy Wayne Lawrence. Secondly, that the Defendant *knowingly encouraged or aided* the other person to commit that crime. And third, that the Defendant's actions or statements caused or contributed to the commission of the crime by Jimmy Wayne Lawrence. So as to burglary by aiding and abetting I charge that if you find from the evidence beyond a reasonable doubt that on or about the alleged date Jimmy Wayne Lawrence committed burglary and that the Defendant was actually present at the time the crime was committed and that the Defendant *knowingly encouraged or aided* Jimmy Wayne Lawrence to commit the crime and that in so doing the Defendant's actions or statements caused or contributed to the commission of the crime by Jimmy Wayne Lawrence, your duty would be to return a verdict of guilty of burglary by aiding and abetting. . . . As to second-degree kidnapping by aiding and abetting, I charge that if you find from the evidence beyond a reasonable doubt that on or about the alleged date Jimmy Wayne Lawrence committed second-degree kidnapping and that the Defendant was actually present at the time the crime was committed and that the Defendant *knowingly encouraged and aided* Jimmy Wayne Lawrence to commit the crime and that in so doing the Defendant's actions or statements caused or contributed to

STATE v. LUCAS

[353 N.C. 568 (2001)]

the commission of the crime by Jimmy Wayne Lawrence, your duty would be to return a verdict of guilty of second-degree kidnapping by aiding and abetting.

(Emphases added.)

When a defendant makes a written request for an instruction that is timely, correct in law, and supported by the evidence, the trial court must give such an instruction. *State v. Dodd*, 330 N.C. 747, 412 S.E.2d 46 (1992). However, the trial court is not required to give a requested instruction verbatim, *State v. Brown*, 335 N.C. 477, 439 S.E.2d 589 (1994), so long as the instruction actually provided adequately conveys the substance of the requested instruction, *State v. Green*, 305 N.C. 463, 290 S.E.2d 625 (1982). Accordingly, we must determine whether the trial court's instructions were correct in law and adequately conveyed the substance of defendant's request.

We review the instructions given here in conjunction with our holding in *State v. Blankenship*, 337 N.C. 543, 447 S.E.2d 727 (1994), *overruled by State v. Barnes*, 345 N.C. 184, 481 S.E.2d 44, *cert. denied*, 522 U.S. 876, 139 L. Ed. 2d 134 (1997), *and cert. denied*, 523 U.S. 1024, 140 L. Ed. 2d 473 (1998), which was controlling at the time this case was tried. In *Blankenship*, the defendant raised a similar issue on appeal, and we held that the trial court's instructions on acting in concert were erroneous because they

permit[ted] defendant to be convicted of premeditated and deliberated murder when he himself did not inflict the fatal wounds, did not share a common purpose to murder with the one who did inflict the fatal wounds and had no specific intent to kill the victims when the fatal wounds were inflicted.

*Id.* at 557, 447 S.E.2d at 736. Specifically, we noted that the doctrine of acting in concert requires that "one may not be criminally responsible under the theory of acting in concert for a crime . . . which requires a specific intent, unless he is shown to have the requisite specific intent." *Id.* at 558, 447 S.E.2d at 736.

The principles set out in *Blankenship* regarding the doctrine of acting in concert subsequently were applied to the doctrine of aiding and abetting in *State v. Buckner*, 342 N.C. 198, 464 S.E.2d 414 (1995), *cert. denied*, 519 U.S. 828, 136 L. Ed. 2d 47 (1996), and *State v. Allen*, 339 N.C. 545, 453 S.E.2d 150 (1995), *overruled on other grounds by State v. Gaines*, 345 N.C. 647, 483 S.E.2d 396, *cert. denied*, 522 U.S.

900, L. Ed. 2d 177 (1997). Although *Blankenship* has been overruled, as noted above, the overruling was not retroactive. *State v. Bonnett*, 348 N.C. 417, 502 S.E.2d 563 (1998), *cert. denied*, 525 U.S. 1124, 142 L. Ed. 2d 907 (1999). Because the instant offense occurred while *Blankenship* was in effect, we apply the *Blankenship* acting in concert rule to defendant's case. *State v. Barrow*, 350 N.C. 640, 517 S.E.2d 374 (1999).

Defendant was convicted under a theory of aiding and abetting both first-degree burglary and second-degree kidnapping, each of which is a specific intent crime. *State v. Moore*, 315 N.C. 738, 743, 340 S.E.2d 401, 404 (1986) ("kidnapping is a specific intent crime"); *State v. Warren*, 313 N.C. 254, 262, 328 S.E.2d 256, 262 (1985) (one of the essential elements of first-degree burglary "is that the breaking and entering must have been accompanied by the intent to commit a felony"). Defendant argues that the trial court's instructions that he must have "knowingly encouraged and aided" and "knowingly encouraged or aided" Lawrence in the commission of the crimes were inadequate and misleading. Specifically, defendant contends that the instructions permitted the jury to find him guilty of burglary and kidnapping without specific findings that he individually possessed the requisite *mens rea* for those crimes. However, we have previously approved instructions similar to those given here. In *Allen*, decided while *Blankenship* was controlling, the trial court instructed the jury that to find the defendant guilty of aiding and abetting, it would have to find in part that the defendant "knowingly aided Thomas Mitchell" in committing first-degree murder or involuntary manslaughter. *State v. Allen*, 339 N.C. at 555, 453 S.E.2d at 156. We found these instructions adequate and stated:

> Despite the court's erroneous use of the phrases "should have known" and "reasonable grounds to believe," we conclude that the instructions as a whole conveyed that under the theory of aiding and abetting, Mitchell had to have the specific intent to kill the victim; defendant had to know this was Mitchell's intent when he handed him the gun; and defendant, with that knowledge, intended to aid Mitchell in committing the crime. The court conveyed this principle by its overall instructions and specifically by its use of the phrase "knowingly aided." The probable interpretation of "knowingly aided" by the jury was that before it could find defendant guilty, it would have to determine that defendant knowingly participated in the crime based on an intent to assist Mitchell in committing it. We also note that this phrase is used to

describe the intent element in the North Carolina Pattern Jury Instructions on aiding and abetting.

*Id.* at 558-59, 453 S.E.2d at 158 (citation omitted).

Citing *Allen,* we reiterated this holding in *Buckner,* which also was decided while *Blankenship* was controlling. We stated:

> Here, the trial court used the phrase "knowingly advised, instigated, encouraged, procured or aided the other person or persons to commit the crime." . . . We conclude these instructions clearly convey that for the jury to find defendant guilty under the theory of aiding and abetting, defendant had to have knowingly participated in the murder based on an intent to assist Bivens in committing the crimes for which defendant was charged. The instructions were not erroneous, and defendant's assignment of error is overruled.

*State v. Buckner,* 342 N.C. at 227, 464 S.E.2d at 430.

In the case at bar, the trial court instructed the jury that it could convict defendant only if it found that, in addition to the other elements, defendant "knowingly encouraged or aided" Lawrence in committing first-degree burglary and "knowingly encouraged and aided" Lawrence in committing second-degree kidnapping. These instructions adequately conveyed the requirement that to convict under a theory of aiding and abetting, defendant had to have the specific intent to aid Lawrence in those offenses. Accordingly, the Court of Appeals erred in holding that the trial court's instructions were improper, and we reverse the decision of the Court of Appeals.

## DEFENDANT'S CONDITIONAL PETITION FOR DISCRETIONARY REVIEW

[2] Defendant's first issue on review is whether the trial court erred when it denied his motion to dismiss the charges of burglary and kidnapping made at the close of the State's evidence and renewed at the close of all the evidence. Defendant contends that there was insufficient evidence to support the convictions.

When such a motion is made, the only issue for the trial court is "whether there is substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the offense." *State v. Crawford,* 344 N.C. 65, 73, 472 S.E.2d 920, 925 (1996). Substantial evidence is such relevant evidence as a reason-

able mind might accept as adequate to support a conclusion. *State v. Vick*, 341 N.C. 569, 461 S.E.2d 655 (1995). In reviewing a motion to dismiss, the trial court should be concerned only with the sufficiency of the evidence, not with its weight. *State v. Sokolowski*, 351 N.C. 137, 522 S.E.2d 65 (1999). The court must consider the evidence in the light most favorable to the State and give the State the benefit of every reasonable inference from that evidence. *State v. Jaynes*, 342 N.C. 249, 464 S.E.2d 448 (1995), *cert. denied*, 518 U.S. 1024, 135 L. Ed. 2d 1080 (1996). The defendant's evidence is not considered unless favorable to the State. *State v. Taylor*, 337 N.C. 597, 447 S.E.2d 360 (1994). Determination of any witness' credibility is for the jury, *State v. Locklear*, 322 N.C. 349, 368 S.E.2d 377 (1988), and contradictions and discrepancies in the evidence are resolved in favor of the State, *State v. Gibson*, 342 N.C. 142, 463 S.E.2d 193 (1995). Review of the sufficiency of the evidence to withstand the defendant's motion to dismiss is the same whether the evidence is direct, circumstantial, or both. *State v. Jones*, 303 N.C. 500, 279 S.E.2d 835 (1981).

We now apply the foregoing principles to the case at bar. The elements of first-degree burglary are: (1) breaking, (2) and entering, (3) at night, (4) into the dwelling, (5) of another, (6) that is occupied, (7) with the intent to commit a felony therein. N.C.G.S. § 14-51 (1999); *State v. Singletary*, 344 N.C. 95, 472 S.E.2d 895 (1996). Here, the felony underlying the burglary was murder. Although aiding and abetting may be found in a number of circumstances, *see* Thomas H. Thornburg, *North Carolina Crimes: A Guidebook on the Elements of Crime* (Institute of Gov't 4th ed. 1995), the elements of aiding and abetting for purposes of the instant case are that defendant: (1) was present at the scene of the crime, (2) intended to aid Lawrence in the crime if necessary, and (3) communicated to Lawrence his intent to provide aid. *State v. Johnson*, 310 N.C. 574, 313 S.E.2d 560 (1984). "The communication or intent to aid does not have to be shown by express words of the defendant but may be inferred from his actions and from his relation to the actual perpetrators." *State v. Goode*, 350 N.C. 247, 260, 512 S.E.2d 414, 422 (1999). In addition, "the motives tempting [him] to assist in the crime . . . and [his] conduct before and after the crime are circumstances to be considered." *State v. Birchfield*, 235 N.C. 410, 414, 70 S.E.2d 5, 8 (1952). Moreover, "when the bystander is a friend of the perpetrator and knows that his presence will be regarded by the perpetrator as an encouragement and protection, presence alone may be regarded as an encouragement." *State v. Goode*, 350 N.C. at 260, 512 S.E.2d at 422. Therefore, "a

defendant may be guilty of a crime by his mere presence if the perpetrator knows the friend's presence will be regarded as encouragement and protection." *State v. Lemons*, 348 N.C. 335, 377, 501 S.E.2d 309, 334 (1998), *sentence vacated on other grounds*, 527 U.S. 1018, 144 L. Ed. 2d 768 (1999). We have referred to this doctrine as the "friend" exception to the general rule that a defendant's mere presence at the scene of a crime is insufficient to establish guilt. *Id.*

Defendant argues that there was insufficient evidence that he possessed the specific intent to aid Lawrence in committing the murder underlying the burglary and that there was insufficient evidence that he communicated any intent to Lawrence. However, defendant's reliance on his own testimony to support this argument is misplaced. *State v. Taylor*, 337 N.C. 597, 447 S.E.2d 360 (unless favorable to the prosecution, defendant's evidence is not to be considered when reviewing the sufficiency of the evidence). Taken in the light most favorable to the State, the evidence reveals that defendant was Lawrence's friend and on 18 January 1997, spent the day with him at a cookout. Defendant, clad in black, accompanied Lawrence that night to McLean's home. When defendant saw that Lawrence was taking a pistol, defendant armed himself with a loaded sawed-off shotgun. After arriving at McLean's home, defendant stood by, holding his shotgun while Lawrence argued with Morrison and pointed his pistol at her. Defendant then followed Lawrence into McLean's home and stood inside the doorway, still holding his shotgun, while Lawrence shot McLean numerous times. As defendant drove the vehicle away from the scene of the crime with Lawrence and the abducted Morrison, he remarked that Lawrence should have killed Morrison also. Defendant later hid Lawrence's murder weapon at his girlfriend's home, and a search of his vehicle yielded several nine-millimeter rounds and twenty-gauge shotgun shells.

From this evidence, the jury readily could have inferred that defendant had the requisite criminal intent to aid Lawrence in committing the felony of murder while inside the victim's residence and that such intent was communicated to Lawrence. This evidence also is sufficient to support an inference that defendant both encouraged and protected Lawrence. Accordingly, the trial court properly denied defendant's motion to dismiss the burglary charge.

[3] We now turn to the charge of second-degree kidnapping. The elements of kidnapping are: (1) confinement, restraint, or removal from one place to another; (2) of a person; (3) without the person's con-

sent; (4) for the purpose of facilitating the commission of a felony. N.C.G.S. § 14-39(a) (1999). If the victim was released in a safe place and neither sexually assaulted nor seriously injured, the kidnapping is of the second degree. N.C.G.S. § 14-39(b). In the case at bar, the trial court instructed the jury on defendant's removal of Morrison for the purpose of facilitating the felony of sexual assault. Because defendant was convicted under a theory of aiding and abetting, we apply the same tests as we did above to determine whether there was sufficient evidence for a trier of fact to find that defendant was at the scene of the kidnapping, that defendant intended to aid Lawrence in the kidnapping, and that he communicated this intent to Lawrence.

Although defendant argues that there was insufficient evidence that he possessed the specific intent to aid Lawrence in removing Morrison for the purpose of facilitating a sexual assault and that there was insufficient evidence that he communicated any such intent to Lawrence, he again erroneously relies on his own testimony. *State v. Taylor*, 337 N.C. 597, 447 S.E.2d 360. Considered in the light most favorable to the State, the evidence shows that defendant left a cookout with Lawrence to travel to McLean's home while aware that Lawrence intended to get a hotel room with a female. Once at McLean's home, defendant watched Lawrence point a pistol at Morrison and demand that she leave with him. After Morrison refused, Lawrence and defendant followed her into McLean's home where Lawrence shot McLean. Lawrence then forced the barely clad Morrison, who was screaming and crying, to leave with him. As defendant drove from the scene of the murder to Lawrence's father's home, he stated to Lawrence, "[Y]ou should have killed her too because she's going to tell it." At one point, Lawrence instructed defendant to "[s]low down. We don't want to make it look like we're doing something wrong." When Lawrence went inside his father's home, defendant hovered behind the vehicle in which Morrison sat until they swapped vehicles. Defendant then drove Lawrence and Morrison to the Comfort Inn where he remained in the vehicle with Morrison while Lawrence registered. Defendant's loaded shotgun subsequently was brought into the rented room. After being paged by Lawrence, defendant later returned to the room to give Lawrence clothing for Morrison. This substantial evidence supports the conclusion that defendant had the requisite criminal intent to aid Lawrence in removing Morrison for the purpose of committing the felony of sexual assault and that his intent was communicated to Lawrence.

Although defendant argues that this evidence at most shows that he assisted Lawrence in escorting Morrison to the hotel for a consensual sexual encounter with Lawrence, a reasonable juror readily could have inferred that defendant knew a sexual assault was in the offing. Testimony established that Morrison, barely dressed and in obvious distress, was removed at gunpoint from her home immediately after she saw her boyfriend murdered and was then kept in the vehicle while Lawrence checked in at the Comfort Inn. Soon thereafter, Morrison noticed that a loaded shotgun had been brought into the hotel room. Defendant's behavior both encouraged and protected Lawrence and also ensured that others would not witness or hinder the commission of the rape. Defendant's claim that he was unaware a sexual assault would take place is not plausible, and the trial court properly denied defendant's motion to dismiss the kidnapping charge. This assignment of error is overruled.

[4] Defendant next contends that he is entitled to a new trial on the kidnapping charge because the trial court instructed the jury on a theory not alleged in the indictment. Defendant did not make a contemporaneous objection; therefore, we review the instructions for plain error. N.C. R. App. P. 10(b)(2), (c)(4). Under this standard, defendant must show that the instructions were erroneous and that absent the erroneous instructions, a jury probably would have returned a different verdict. N.C.G.S. § 15A-1443(a) (1999); *State v. White*, 321 N.C. 52, 361 S.E.2d 724 (1987). The error in the instructions must be "so fundamental that it denied the defendant a fair trial and quite probably tilted the scales against him." *State v. Collins*, 334 N.C. 54, 62, 431 S.E.2d 188, 193 (1993). We have observed that " '[i]t is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court.' " *State v. Odom*, 307 N.C. 655, 661, 300 S.E.2d 375, 378 (1983) (quoting *Henderson v. Kibbe*, 431 U.S. 145, 154, 52 L. Ed. 2d 203, 212 (1977)).

As a general rule, "an indictment couched in the language of the statute is sufficient to charge the statutory offense." *State v. Blackmon*, 130 N.C. App. 692, 699, 507 S.E.2d 42, 46, *cert. denied*, 349 N.C. 531, 526 S.E.2d 470 (1998). Although defendant was convicted of aiding and abetting second-degree kidnapping, he was indicted for first-degree kidnapping. In order properly to indict a defendant for first-degree kidnapping, the State must allege both the essential elements of kidnapping as provided in N.C.G.S. § 14-39(a) and at least one of the elements of first-degree kidnapping listed in

N.C.G.S. § 14-39(b). *State v. Bell*, 311 N.C. 131, 316 S.E.2d 611 (1984). Section 14-39 of the North Carolina General Statutes provides:

(a) Any person who shall unlawfully confine, restrain, or remove from one place to another, any other person 16 years of age or over without the consent of such person, or any other person under the age of 16 years without the consent of a parent or legal custodian of such person, shall be guilty of kidnapping if such confinement, restraint or removal is for the purpose of:

 (1) Holding such other person for a ransom or as a hostage or using such other person as a shield; or

 (2) Facilitating the commission of any felony or facilitating flight of any person following the commission of a felony; or

 (3) Doing serious bodily harm to or terrorizing the person so confined, restrained or removed or any other person; or

 (4) Holding such other person in involuntary servitude in violation of G.S. 14-43.2.

(b) There shall be two degrees of kidnapping as defined by subsection (a). If the person kidnapped either was not released by the defendant in a safe place or had been seriously injured or sexually assaulted, the offense is kidnapping in the first degree and is punishable as a Class C felony. If the person kidnapped was released in a safe place by the defendant and had not been seriously injured or sexually assaulted, the offense is kidnapping in the second degree and is punishable as a Class E felony.

N.C.G.S. § 14-39(a), (b).

The indictment in defendant's case provided:

The jurors for the State upon their oath present that on or about the date of offense shown and in the county named above the defendant named above unlawfully, willfully and feloniously did kidnap Gwen Morrison, a person who had attained the age of 16 years, by unlawfully *confining* her without her consent, and for the purpose of facilitating the commission of a felony, to wit: murder, sexual assault and for terrorizing the victim. Ms. Morrison was released in a safe place, and was sexually assaulted.

(Emphasis added.) However, the trial court gave the following instruction to the jury:

> As to first-degree kidnapping—he is also accused of first-degree kidnapping on two theories: One as the principal and the other as an aider and abettor. As to first-degree kidnapping for you to find the Defendant guilty of first-degree kidnapping the State must prove five elements beyond a reasonable doubt: First, that the Defendant unlawfully *removed* a person from one place to another. Second, that the person did not consent to this *removal*. A consent obtained by fear is not consent. Third, that the Defendant *remove* that person for the purpose of commission of a felony sexual assault. . . . Fourth, that this *removal* was a separate, complete act independent of and apart from a sexual assault. And fifth, that the person had been sexually assaulted. So I charge if you find from the evidence beyond a reasonable doubt that on or about the alleged date the Defendant unlawfully, that is, the Defendant himself unlawfully *removed* Gwen Morrison from one place to another and that she did not consent to this *removal* and that this *removal* was done for the purpose of commission of a felonious sexual assault and that this *removal* was a separate complete act independent of and apart from sexual assault and that Gwen Morrison had been sexually assaulted, your duty would be to return a verdict of guilty of first-degree kidnapping as principal. . . . Second-degree kidnapping differs from first-degree kidnapping only in that it is unnecessary for the State to prove that the person kidnapped had been sexually assaulted. So I charge that if you find from the evidence beyond a reasonable doubt that on or about the alleged date the Defendant unlawfully *removed* Gwen Morrison from one place to another and she did not consent to this *removal* and that this *removal* was done for the purpose of commission of a sexual assault and that this *removal* was a separate complete act independent and apart from the intended sexual assault, your duty would be to return a verdict of guilty of second-degree kidnapping as a principal.

(Emphases added.)

We have long held that "it is error, generally prejudicial, for the trial judge to permit a jury to convict upon some abstract theory not supported by the bill of indictment." *State v. Taylor*, 301 N.C. 164, 170, 270 S.E.2d 409, 413 (1980). For instance, in *State v. Dammons*, 293 N.C. 263, 237 S.E.2d 834 (1977), the defendant was indicted for

kidnapping on a theory of removal for purposes of terrorizing and feloniously assaulting the victim. However, the trial court instructed the jury that it could find the defendant guilty if he confined, restrained or removed the victim for the purposes of holding the victim for ransom, holding the victim hostage, sexually assaulting the victim, or facilitating flight. We noted that "[t]hese theories of the crime were neither supported by the evidence nor charged in the bill of indictment" and held that the instructions constituted prejudicial error. *Id.* at 272, 237 S.E.2d at 841. Subsequently, in *State v. Taylor*, the defendant was indicted on a theory of removal for the purposes of facilitating defendant's commission of the felony of rape and subsequent flight. The trial court, however, charged the jury on theories of confinement, removal or restraint for the purposes of facilitating the defendant's flight from apprehension for another crime or to obtain the use of the victim's vehicle. The Court in the *Taylor* opinion did not state whether the defendant lodged an objection to the trial court's instructions or what standard of review was applied. We noted that the indictment charged "removing" while the instruction erroneously cited "confined" and "restrained" and observed that while confinement and restraint might be supported by the evidence, those theories were not charged in the indictment. However, our extended analysis focused on the purpose for which the kidnapping was committed. We held:

> It was prejudicial error, therefore, for the trial court to instruct with respect to "another crime" and to refer to "[obtaining] the use of her vehicle," the latter not being charged in the bill of indictment. . . . Its failure to instruct on the theory charged in the bill of indictment, in addition to its instructions on theories not charged, constitutes prejudicial error entitling defendant to a new trial on the charge of kidnapping.

*State v. Taylor*, 301 N.C. at 171, 270 S.E.2d at 413-14. Likewise, in *State v. Brown*, 312 N.C. 237, 321 S.E.2d 856 (1984), the defendant was indicted on theories of confinement, removal and restraint for the purpose of facilitating the commission of the felony of attempted rape. The indictment also alleged that the defendant did not release the victim in a safe place. However, the trial court charged the jury on theories of confinement, removal and restraint for the purpose of terrorizing the victim. In addition, the trial court instructed that to convict defendant of first-degree kidnapping, the jury must find that the defendant sexually assaulted the victim rather than that he failed to release her in a safe place, as alleged in the indictment. Noting that

we were "especially concerned by the 'terrorism' instruction, for the State presented absolutely no evidence directed to proof of the theory that defendant kidnapped Ms. Noles for the purpose of terrorizing her," we concluded that

> the judge's instructions permitted the jury in this case to predicate guilt on theories of the crime which were not charged in the bill of indictment and which were, in one instance, not supported by the evidence at trial. We therefore hold that under the factual circumstances of this case, there was "plain error" in the jury instructions as that concept was defined in *Odom* and defendant must therefore receive a new trial on the first-degree kidnapping charge.

*Id.* at 249, 321 S.E.2d at 863. Finally, in *State v. Tucker*, 317 N.C. 532, 346 S.E.2d 417 (1986), the defendant was indicted on a theory of removal for purposes of facilitating the commission of the felonies of first-degree rape and first-degree sexual offense, but the trial court instructed the jury on a theory of restraint. We held that under a plain error analysis, "[i]n light of the highly conflicting evidence in the instant kidnapping case on the unlawful removal and restraint issues, we think the instructional error might have . . . ' "tilted the scales" and caused the jury to reach its verdict convicting the defendant." ' *Id.* at 540, 346 S.E.2d at 422 (quoting *State v. Walker*, 316 N.C. 33, 39, 340 S.E.2d 80, 83 (1986)).

Because the indictment here charged confinement, the instructions given by the trial court based on the theory of removal were erroneous. However, we find that the error was not prejudicial. The cases cited above are distinguishable from the case at bar. In *Dammons*, *Brown* and *Taylor*, the trial court instructed the jury on the defendant's underlying intent or purpose in committing the kidnapping, which in each case differed from that alleged in the indictment. In the instant case, however, defendant was indicted for kidnapping for the purposes of facilitating the commission of "murder, sexual assault and for terrorizing the victim," and the trial court instructed the jury that defendant's purpose in the kidnapping was to commit sexual assault, either as a principal or as an aider and abettor. Thus, unlike *Dammons*, *Brown* and *Taylor*, this purpose did not differ from that listed in the indictment. In addition, while the evidence in *Tucker* was highly conflicting, the evidence of confinement, restraint and removal was compelling in the case at bar. After examining the instructions and the record in its entirety, we cannot say that any defect in the instructions was " 'a "fundamental error, some-

thing so basic, so prejudicial, so lacking in its elements that justice cannot have been done." ' " *State v. Odom*, 307 N.C. at 660, 300 S.E.2d at 378 (quoting *United States v. McCaskill*, 676 F.2d 995, 1002 (4th Cir.) (footnote omitted), *cert. denied*, 459 U.S. 1018, 74 L. Ed. 2d 513 (1982)), *quoted in State v. Robinson*, 346 N.C. 586, 603, 488 S.E.2d 174, 185 (1997); *see also State v. Clinding*, 92 N.C. App. 555, 562-63, 374 S.E.2d 891, 895 (1989) (defendant argued that the trial court committed plain error in instructing the jury on restraint when the indictment alleged only removal and confinement as theories of kidnapping, and the court held that "[b]ecause the evidence of defendant's guilt in this case is overwhelming," including "the testimonies of five eyewitnesses, and a confession by the defendant explaining his involvement in the crimes, suffice it to say that we do not believe that a different result would likely have been reached had this instruction not been given"). Accordingly, we conclude that a different result would not have been reached had the trial court instructed on confinement rather than removal and hold that the erroneous instructions do not constitute prejudicial error.

Although our holding in *Tucker* was intended to encourage trial courts to exercise care in instructing juries in kidnapping cases, we note that issues relating to such instructions continue to arise. In *State v. Raynor*, 128 N.C. App. 244, 495 S.E.2d 176 (1998), the indictment alleged restraint, but the instructions allowed a conviction upon either restraint or removal. No objection was raised, and the Court of Appeals found no plain error, holding that the evidence supported conviction on either theory. In *State v. Dominie*, 134 N.C. App. 445, 518 S.E.2d 32 (1999), the indictment alleged removal, and the trial court instructed that the jury could convict upon a finding of removal, restraint or confinement. The State confessed error on the issue, and the Court of Appeals reversed, citing *Tucker*. The Court of Appeals in *Dominie* did not state whether an objection was raised at trial. Most recently, in *State v. Lancaster*, 137 N.C. App. 37, 527 S.E.2d 61, *disc. rev. denied in part and allowed in part*, 352 N.C. 680, —— S.E.2d —— (2000), the indictment charged kidnapping by confining, restraining *and* removing. The court instructed on kidnapping by confinement, restraint *or* removal. In the absence of an objection, the Court of Appeals applied plain error analysis and found no error, holding that the evidence allowed a conviction under any of the theories.

Because kidnapping is an ongoing offense that often begins as a restraint or confinement and segues into a removal, *State v. White*,

127 N.C. App. 565, 492 S.E.2d 48 (1997), a prosecutor may encounter problems in drafting an indictment that properly describes the offense and gives adequate notice to the defendant. The trial court may face similar difficulties in preparing instructions for the jury. Although we acknowledge these concerns, we reaffirm our holding in *Tucker*, and we again adjure the trial courts to take particular care to ensure that the jury instructions are consistent with the theory presented in the indictment and with the evidence presented at trial.

This assignment of error is overruled.

**[5]** Defendant also argues that he is entitled to a new trial on the burglary and kidnapping charges because the trial court failed to instruct the jury on defendant's "mere presence." As above, because defendant did not object to the instructions at trial, we review the instructions for plain error. N.C. R. App. P. 10(b)(2), (c)(4).

The trial court gave the following instructions during its charge to the jury:

Now, as to aiding and abetting in the charge of burglary and first- or second-degree kidnapping, a person may be guilty of a crime although he personally does not do any of the acts necessary to constitute that crime. A person who aids and abets another to commit a crime is guilty of that crime. You must clearly understand that if he does aid and abet, he is guilty of the crime just as if he had personally done all the acts necessary to constitute the crime. For you to find the Defendant guilty of another crime because of aiding and abetting the State must prove generally three elements beyond a reasonable doubt: First, that the crime was committed by some other person, in this case Jimmy Wayne Lawrence. Second, that the Defendant knowingly encouraged or aided the other person to commit that crime. And third, that the Defendant's actions or statements caused or contributed to the commission of the crime by Jimmy Wayne Lawrence.

These instructions reflect almost verbatim the pattern jury instructions for aiding and abetting. N.C.P.I.—Crim. 202.20 (1998). However, defendant contends that the court also should have included parenthetical language provided in the pattern instructions as follows:

(A person is not guilty of a crime merely because he is present at the scene, even though he may silently approve of the crime or secretly intend to assist in its commission. To be guilty he must

aid or actively encourage the person committing the crime, or in some way communicate to this person his intention to assist in its commission.)

*Id.*

There is no question that a defendant's mere presence at the scene of a crime will not support a finding of guilt of the crime charged. *State v. Walden*, 306 N.C. 466, 476, 293 S.E.2d 780, 786-87 (1982) ("It remains the law that one may not be found to be an aider and abettor, and thus guilty as a principal, solely because he is present when a crime is committed.").[1]

"To render one who does not *actually participate* in the commission of the crime guilty of the offense committed, there must be some evidence to show that he, by word or deed, gave active encouragement to the perpetrator of the crime or by his conduct made it known to such perpetrator that he was standing by to render assistance when and if it should become necessary."

*State v. Johnson*, 310 N.C. 574, 579, 313 S.E.2d 560, 564 (1984) (quoting *State v. Ham*, 238 N.C. 94, 97, 76 S.E.2d 346, 348 (1953)) (alteration in original). There is no obligation, however, to give an instruction on mere presence where the evidence is undisputed that the defendant participated in the crime and was not just a bystander. *State v. Cheek*, 351 N.C. 48, 520 S.E.2d 545 (1999) (defendant was not entitled to an instruction on mere presence where there was undisputed evidence that he actively participated in the kidnapping and robbery of the victim), *cert. denied*, 530 U.S. 1245, 147 L. Ed. 2d 965 (2000); *State v. Bonnett*, 348 N.C. 417, 502 S.E.2d 563 (trial court correctly did not instruct jury on mere presence where evidence overwhelmingly showed defendant was not merely present at the murder scene but that defendant agreed to the robbery and murder, supplied the murder weapon, and actively participated in stealing the money box); *State v. Harvell*, 334 N.C. 356, 432 S.E.2d 125 (1993) (trial court did not err in giving pattern instruction that did not include a provision on mere presence where defendant followed codefendant into group with a steel pipe and made it known to codefendant that he was willing to lend any assistance necessary as codefendant shot the victim).

---

1. As discussed previously, the "mere presence" rule is subject to an exception where a friend's presence provides encouragement and protection to the perpetrator. *State v. Lemons*, 348 N.C. 335, 501 S.E.2d 309.

As in the cases cited above, there is undisputed evidence that defendant was more than merely present at the scene of the offenses. That evidence, detailed previously, showed that defendant armed himself to accompany his friend Lawrence, stood by with his loaded weapon ready for use while Lawrence abducted Morrison after shooting her boyfriend numerous times, commented on Lawrence's failure to kill Morrison, drove the getaway car, guarded Morrison, brought clothes to Lawrence for Morrison to wear, and hid Lawrence's murder weapon. Defendant did not deny any of this evidence, and his contention that it amounts to "mere presence" is unpersuasive.

Moreover, when read as a whole, the instructions adequately convey the principle that defendant's presence alone is not sufficient to support a conviction for burglary or kidnapping as an aider and abettor. Given these instructions, a reasonable juror could not have found that defendant's mere presence at the scene of the crimes was sufficient for a conviction. *State v. Hammonds*, 301 N.C. 713, 272 S.E.2d 856 (1981) (trial court's instructions emphasizing that an aider and abettor has to knowingly advise, encourage, instigate or aid another in committing a crime were sufficient to illustrate that defendant's presence alone was not sufficient to convict). This assignment of error is overruled.

### DEFENDANT'S MOTION FOR APPROPRIATE RELIEF

**[6]** Defendant contends in his motion for appropriate relief that the court-imposed enhancements of his burglary and kidnapping sentences must be vacated because North Carolina's firearm enhancement statute, N.C.G.S. § 15A-1340.16A (1999), is unconstitutional on its face and as applied to him. Specifically, defendant argues that the statute unconstitutionally authorizes imposition of an enhanced sentence without requiring submission of the enhancing factors to a jury and without requiring proof of those factors beyond a reasonable doubt. In addition, defendant asserts that the trial court lacked jurisdiction to impose the sentencing enhancements because none of the indictments alleged any elements set out in the applicable statute.

Section 15A-1340.16A, North Carolina's firearm enhancement statute, provides:

   (a) If a person is convicted of a Class A, B1, B2, C, D, or E felony and the court finds that the person used, displayed, or threatened to use or display a firearm at the time of the felony,

the court shall increase the minimum term of imprisonment to which the person is sentenced by 60 months. The court shall not suspend the 60-month minimum term of imprisonment imposed as an enhanced sentence under this section and shall not place any person sentenced under this section on probation for the enhanced sentence.

(b) Subsection (a) of this section does not apply in any of the following circumstances:

(1) The person is not sentenced to an active term of imprisonment.

(2) The evidence of the use, display, or threatened use or display of a firearm is needed to prove an element of the underlying Class A, B1, B2, C, D, or E felony.

(3) The person did not actually possess a firearm about his or her person.

N.C.G.S. § 15A-1340.16A.

At defendant's trial, the jury returned verdicts finding defendant guilty of both first-degree burglary and second-degree kidnapping. First-degree burglary is punishable as a class D felony, N.C.G.S. § 14-52 (1999), and second-degree kidnapping is punishable as a class E felony, N.C.G.S. § 14-39. At sentencing, the trial court found defendant to have a prior record level of I. Pursuant to section 15A-1340.17, which provides in pertinent part the punishment limits for each class of offense and prior record level, N.C.G.S. § 15A-1340.17(c), (e) (1999), the trial court sentenced defendant to 64 to 86 months' imprisonment for first-degree burglary and 25 to 39 months' imprisonment for second-degree kidnapping. The trial court then added 60 months to each sentence pursuant to the firearm enhancement statute, which resulted in the imposition of 124 to 146 months' imprisonment for the burglary and 85 to 99 months' imprisonment for the kidnapping.

Our review of the legality of these sentences is both guided and bound by two recent opinions of the United States Supreme Court. In *Jones v. United States*, 526 U.S. 227, 143 L. Ed. 2d 311 (1999), the defendant was indicted, in part, for carjacking or aiding and abetting that offense in violation of 18 U.S.C. § 2119. That statute authorizes a maximum penalty of fifteen years' imprisonment upon conviction; however, higher penalties may be imposed when the offense results in serious bodily injury or death. The defendant's indictment made no

STATE v. LUCAS

[353 N.C. 568 (2001)]

reference to the numbered subsections of the statute that specify the offense level, nor did it allege any of the factors set out in those subsections that authorize the sentencing court to impose an enhanced sentence. However, because a preponderance of the evidence established that one of the victims had suffered serious bodily injury, the district court sentenced defendant under a twenty-five-year enhancement provision of the statute. The United States Court of Appeals for the Ninth Circuit affirmed the defendant's sentence, but the United States Supreme Court reversed.

Focusing on the role of the jury and the distinction between an "element" of an offense and a "sentencing consideration," the Supreme Court expressed concern "whether recognizing an unlimited legislative power to authorize determinations setting ultimate sentencing limits without a jury would invite erosion of the jury's function to a point against which a line must necessarily be drawn." *Id.* at 244, 143 L. Ed. 2d at 326. The Court determined that the "diminishment of the jury's significance by removing control over facts determining a statutory sentencing range" would raise serious constitutional questions under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees under the Sixth Amendment. *Id.* at 248, 143 L. Ed. 2d at 329. Accordingly, the Court construed 18 U.S.C. § 2119 "as establishing three separate offenses by the specification of distinct elements" and held that each element "must be charged by indictment, proven beyond a reasonable doubt, and submitted to a jury for its verdict." *Id.* at 252, 143 L. Ed. 2d at 331.

Subsequently, the Supreme Court extended this holding to the states in *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435 (2000). In *Apprendi*, the defendant fired several bullets into the home of an African-American family. The defendant was indicted, in part, for second-degree possession of a firearm for an unlawful purpose in violation of N.J. Stat. Ann. § 2C:39-4a. Under New Jersey state law, a second-degree offense is punishable by imprisonment between five and ten years. However, New Jersey has enacted a hate crime law, N.J. Stat. Ann. § 2C:44-3(e) (West Supp. 2000), which authorizes an extended imprisonment term between ten and twenty years for second-degree offenses committed for the purpose of intimidating individuals on the basis of their race, color, gender, handicap, religion, sexual orientation or ethnicity. The trial court applied this enhancement in the defendant's case after finding by a preponderance of the evidence that the defendant's actions were undertaken for

the purpose of intimidation. Although the Appellate Division of the Superior Court of New Jersey and the New Jersey Supreme Court affirmed, the United States Supreme Court reversed.

As in *Jones*, the Court analyzed the difference between an "element" of an offense and a "sentencing factor" and concluded that the key inquiry is, "[D]oes the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?" *Apprendi*, 530 U.S. at 494, 147 L. Ed. 2d at 457. The Court answered this question in the affirmative, stating that "the effect of New Jersey's sentencing 'enhancement' here is unquestionably to turn a second-degree offense into a first-degree offense, under the State's own criminal code." *Id.*

> "[U]nder the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." The Fourteenth Amendment commands the same answer in this case involving a state statute.

*Id.* at 476, 147 L. Ed. 2d at 446 (quoting *Jones v. United States*, 526 U.S. at 243 n.6, 143 L. Ed. 2d at 326 n.6). Accordingly, the Supreme Court held: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490, 147 L. Ed. 2d at 455.

*Jones* and *Apprendi* apply to the case at bar only if the statute in question "increases the penalty for a crime beyond the prescribed statutory maximum." *Id.* The North Carolina sentencing scheme is structurally unlike that of either New Jersey or the United States. With only a few exceptions, such as N.C.G.S. § 14-17, North Carolina criminal statutes setting out the elements of offenses do not specify a punishment. Instead, the statutes define the class of felony. Reference must then be made to article 81B of section 15A of the General Statutes, which contains the sentencing charts. The range of possible minimum sentences becomes known only when the sentencing court determines the defendant's prior record level and whether the offense was mitigated or aggravated, then cross-checks the sentencing grid found in N.C.G.S. § 15A-1340.17(c) to determine the available range of minimum sentences. Once the minimum sentence is selected from that range, the sentencing court refers to

another chart found in N.C.G.S. § 15A-1340.17(e) to determine the maximum sentence corresponding to the minimum sentence that has been imposed. *See* Stevens H. Clarke, *Law of Sentencing, Probation and Parole in North Carolina* (Institute of Gov't 2d ed. 1997).

Because many of the factors that are considered in determining a defendant's sentencing range are uncertain or unknown in the early stages of a criminal prosecution, most trial courts routinely have followed a cautious course and advised defendants at arraignment that the maximum sentence is that which could be imposed if the defendant were in the highest criminal history category and the offense were aggravated. Such prudence is entirely sensible, and we endorse it. Any estimate of a sentence based on preliminary and incomplete information will be wrong if, as frequently happens, additional facts surface that have an impact on sentencing detrimental to the defendant. Similarly, most trial courts follow a comparable procedure when a negotiated plea is entered. Although the parties may have agreed to the sentence that will actually be imposed, the court must nevertheless again advise the defendant of the maximum possible sentence. N.C.G.S. § 15A-1022(a)(6) (1999). Warning a defendant of the harshest possible outcome ensures that the defendant is fully advised of the implications of the charge against him or her and, if pleading, is aware of the possible consequences of the plea. We believe this approach, focusing on the theoretical maximum sentence any defendant could receive rather than the actual maximum sentence a particular defendant is facing, is also proper for determining the statutory maximum sentence for an offense. Accordingly, we hold that, unless the statute describing the offense explicitly sets out a maximum sentence, the statutory maximum sentence for a criminal offense in North Carolina is that which results from: (1) findings that the defendant falls into the highest criminal history category for the applicable class offense and that the offense was aggravated, followed by (2) a decision by the sentencing court to impose the highest possible corresponding minimum sentence from the ranges presented in the chart found in N.C.G.S. § 15A-1340.17(c). The statutory maximum sentence is then found by reference to the chart set out in N.C.G.S. § 15A-1340.17(e).

In the present case, defendant was convicted of first-degree burglary, a class D felony. N.C.G.S. § 14-52. Although defendant's prior record level was I and his actual sentencing range was toward the low end of the sentencing tables, we determine the statutory maximum sentence, as opposed to defendant's maximum sen-

tence, by assuming that the offense was aggravated and that defendant had a criminal history level of VI. Accordingly, the highest possible minimum sentence for defendant is 183 months. N.C.G.S. § 15A-1340.17(c). Reference to N.C.G.S. § 15A-1340.17(e) reveals that the corresponding statutory maximum sentence is 229 months. However, application of the firearm enhancement yields an enhanced minimum sentence of 243 months (183 months plus the 60-month enhancement), and N.C.G.S. § 15A-1340.17(e) then provides an enhanced maximum sentence of 301 months, which exceeds the statutory maximum of 229 months. A similar analysis of defendant's second-degree kidnapping offense shows that, despite defendant's prior record level of I, application of the firearm enhancement results in an enhanced maximum sentence that exceeds the statutory maximum.

Under this analysis, it is apparent that the enhancement provision of N.C.G.S. § 15A-1340.16A "increases the penalty for [defendant's] crime[s] beyond the prescribed statutory maximum." *Apprendi*, 530 U.S. at 490, 147 L. Ed. 2d at 455. According to our analysis of the process used to determine the statutory maximum sentence for any given offense, the addition of sixty months to the longest minimum sentence results in the addition of at least sixty months to the corresponding statutory maximum sentence, a process which results in an enhanced maximum exceeding that set out in the sentencing charts for a defendant in the highest criminal history category convicted of an aggravated offense.[2] This result is forbidden by *Jones* and *Apprendi* unless the use of a firearm under the statute is charged in the indictment, proven beyond a reasonable doubt, and submitted to the jury. Accordingly, we hold that in every instance where the State

2. To illustrate, consider a defendant convicted of a class E felony. Assuming an aggravated offense and a criminal history category of VI, the defendant's longest minimum sentence is 74 months according to N.C.G.S. § 15A-1340.17(c). Cross-reference to the table in N.C.G.S. § 15A-1340.17(e) then yields a corresponding statutory maximum of 98 months. If the firearm enhancement is applied, the longest minimum sentence becomes 134 months (74 months plus 60 months), and the corresponding maximum becomes 170 months, which exceeds the 98-month statutory maximum sentence. Another example is a defendant convicted of an aggravated class B1 offense who falls into criminal history category IV, the highest category for any class offense that does not automatically receive a life sentence upon conviction. A judge following our analysis would determine that the statutory maximum sentence is the sum of 480 months, 20% of 480 months, and 9 months, or 585 months. N.C.G.S. § 15A-1340.17(c), (e1). This sentence appears to be the highest maximum nonlife sentence contemplated by the sentencing tables. However, if the firearm enhancement is added, the enhanced maximum sentence would be the sum of 540 months (480 months plus the 60-month enhancement), 20% of 540 months, and 9 months, or 657 months, a sentence exceeding any found in the sentencing tables.

seeks an enhanced sentence pursuant to N.C.G.S. § 15A-1340.16A, it must allege the statutory factors supporting the enhancement in an indictment, which may be the same indictment that charges the underlying offense, and submit those factors to the jury. If the jury returns a guilty verdict that includes these factors, the trial judge shall make the finding set out in the statute and impose an enhanced sentence.

We must acknowledge that our analysis does not encompass the most serious offenses. Regardless of the firearm enhancement, life without parole and death are the only sentences available for defendants convicted of a class A offense, and life without parole is the only sentence available for a defendant convicted of a class B1 offense whose prior record level is V or VI. Nevertheless, should a prosecutor wish to have an enhancement on the record for a judge conducting a review pursuant to N.C.G.S. § 15A-1380.5 or for other purposes, the enhancement must be pleaded by indictment and proven as set out in the body of this opinion.

Because defendant was not charged in an indictment with the statutory factors supporting an enhancement, nor were those factors submitted to the jury, the trial court improperly imposed an enhanced sentence. We remand to the trial court for imposition of an unenhanced sentence in accordance with this opinion.

We note that, as in *Apprendi*, this holding does not declare N.C.G.S. § 15A-1340.16A unconstitutional, but instead requires that the State meet the requirements set out in *Jones* and *Apprendi* in order to apply the enhancement provisions of the statute. We further hold that this ruling applies to cases in which the defendants have not been indicted as of the certification date of this opinion and to cases that are now pending on direct review or are not yet final. *State v. Hinnant*, 351 N.C. 277, 523 S.E.2d 663 (2000); *Griffith v. Kentucky*, 479 U.S. 314, 93 L. Ed. 2d 649 (1987).

To prevent future confusion, we also take this opportunity to address an issue raised by the State that might otherwise come before this Court in future cases. Defendant was convicted of first-degree burglary, a class D felony. The offense was neither mitigated nor aggravated, and defendant's criminal history category was at level I. The trial court properly determined a sentence of a minimum of 64 months' imprisonment and a maximum of 86 months' imprisonment. However, when the trial court enhanced the sentence, it added 60 months to both the minimum and maximum sentence, yielding 124

to 146 months' imprisonment. The trial court followed the same procedure with defendant's kidnapping sentence. However, N.C.G.S. § 15A-1340.16A provides only that the 60 months are added to the *minimum* sentence. Accordingly, we believe that the General Assembly intended that the trial court add 60 months to the minimum sentence, then refer to the sentencing charts to determine the corresponding maximum sentence. In the case at bar for example, an enhanced minimum sentence of 124 months for kidnapping would yield an enhanced maximum sentence of 158 months, rather than 146 months.

Based upon the foregoing, we reverse the decision of the Court of Appeals as to the issue raised by the State on appeal and hold that the trial court properly instructed as to defendant's specific intent to commit first-degree kidnapping .and second-degree burglary. As to defendant's additional issues raised in his petition for discretionary review, we find no error. As to defendant's motion for appropriate relief seeking review of his enhanced sentences for first-degree kidnapping and second-degree burglary, we vacate the sentences imposed and remand to the trial court for further proceedings consistent with this opinion.

REVERSED IN PART; NO ERROR IN PART; SENTENCES VACATED IN PART AND REMANDED FOR NEW SENTENCING HEARING IN PART.