STATE v. THOMAS HESTER.

(Decided March 25, 1898.)

*Indictment for Perjury—Allegation and Proof—*
*Variance.*

Where a bill of indictment for perjury alleged that it was committed in
  an action wherein one "H was plaintiff and Thomas R. Robertson
  was defendant," and the proof was that "Thomas Robertson" was
  the defendant in said action and there was evidence of the iden-
  tity of Thomas Robertson and Thomas R. Robertson ; *Held,* That
  the variance was not fatal and it was for the jury to determine the
  identity of the two persons, it being the policy of the law (Section
  1183, of *The Code*) that no judgment shall be arrested by reason
  of informality, technicality or "refinement."

INDICTMENT for perjury tried before *Robinson, J.,* and
a jury at September, 1897, Term of WAKE Superior
Court.

The defendant was convicted and sentenced for three
years to hard labor on the public roads of Wake County,
and appealed from the refusal of a motion for a new
trial, assigning as error the refusal of a prayer for
instruction to the jury that there was a fatal variance
between the allegation and proof.

*Mr. Zeb V. Walser, Attorney General,* for the State.
*Messrs. Argo & Snow* and *Battle & Mordecai* for
defendant (appellant).

CLARK, J.: The defendant was indicted for perjury
committed in an action wherein one "Abram Hester
was plaintiff and Thos. R. Robertson was defendant"
and the record offered in evidence showed that "Abram
Hester was plaintiff and Thomas Robertson was defend-
ant." The defendant prayed the court to charge that
this was a fatal variance between allegation and proof,

and that the jury must find the defendant not guilty. There was evidence of the identity of Thomas Robertson and Thos. R. Robertson, which indeed was not denied, nor indeed questioned in any other way than by the prayer for instruction. His Honor declined to give the prayer for instructions, but told the jury that it was their duty to determine the identity of the persons named, and if they entertained a reasonable doubt concerning the same, they should acquit.

The defendant has no ground of complaint. It does not appear that he was in any wise prejudiced and his exception is one of the "refinements" which the Act of 1811, now *The Code*, Sec. 1183, was enacted to root out of the law. In *State* v. *Brown*, 79 N. C., 642, the indictment charged that the perjury had been committed in a case "between the State and the said Benjamin Brown," while the proper title of the cause was "The State upon the relation of Maria Williams against Benjamin Brown." This was held no material variance. In *State* v. *Collins*, 85 N. C., 511, the perjury was alleged to have been committed in an action between "the State as plaintiff and the said James N. Collins, as defendant." The record introduced showed that the action was entitled "The State and Cornelia Burnett against James N. Collins." The court held "the discrepancy immaterial and the exception untenable." To the same effect is *State* v. *Peters*, 107 N. C., 876. In *State* v. *Hare*, 95 N. C., 682, it was held an immaterial variance that the perjury was charged to have been committed on the trial of "Willis Fain," while the record was that it was on the trial of "Willie Fanes". In *State* v. *Davis*, 69 N. C., 495, the false oath was alleged to have been made in an action "before Joseph Q. Pratt, a Justice of the Peace in and for said county,"

instead of a "court of the Justice of the Peace for Township A of Chowan County," as should have been done. This was held a mere "refinement" and cured by the Act of 1811 (now *Code* 1183.) In *State* v. *Lane*, 80 N. C., 407, the defendant was charged with forging an order addressed to "Dulks & Helker," and signed "J. B. Runkins." The proof was that the name of the drawee firm was "Helker & Duts," and the name of the party forged was "J. B. Rankin." The court held that there being "no uncertainty as to who were meant, this was not a substantial and fatal variance." In *State* v. *Collins*, 115 N. C., 716, the defendant was charged with forging the signature of "Major Vass." The proof was that the order was signed "Mage Vase." This court approved an instruction to the jury that if they found that the defendant was attempting to induce the belief that W. W. Vass had signed the order, and that he was commonly known as "Major Vass," as charged in the bill, the spelling, "Mage Vase," was not a fatal variance, and many similar cases are cited in that opinion. Among others, *State* v. *Houser*, 44 N. C., 410, in which the property was laid in "William Michaels" and the proof was that the true name was "William H. Michael," and it was not a material variance—a case closely resembling this. Also 83 Ala., 79, where the name laid in an indictment was "George Rooks" and the proof was of "Geo. W. Rux," and 97 Mo., 311, where the name in the indictment was "J. D. Hubba," and the proof was "Joel D. Hubbard."

On a trial for larceny where ownership was laid in "Elizabeth Williams," and the proof was that "Betsy Williams" was the owner, the identity of these parties was properly left to the jury. *State* v. *Godet*, 29 N. C., 210, as likewise the identity of S. L. Williams and

Samuel L. Williams, when one was named in the indictment and the other in the proof. *State McMillan*, 68 N. C., 440. To like purport as to name of deceased, in a trial for murder (*State* v. *Henderson*, Id., 348.) Besides middle names and middle initials are immaterial and variances in that respect will not be considered, for the common law recognizes only one Christian name, 16 Am. and Eng. Enc., Law 114, and judicial notice will be taken of the ordinary abbreviations of Christian names. Ib. 115, "Th." was held equivalent to "Thomas," in *Ogden* v. *Gibbon*, 5 N. J. L., 518, 531.

The practical sense of the age demands that guilt or innocence shall be determined upon proof and that immaterial variances and refinements and technicalities shall not avail defendants when they are not in truth prejudiced thereby. The legislative department has made this very plain in numerous enactments, notably in *The Code*, Sections 1183, 1189, 908 and in many other sections and in the comparatively recent statutes providing short forms of indictment for murder (Acts 1887, Ch., 58, *State* v. *Arnold*, 107 N. C., 861), perjury (Acts 1889 Ch., 83 ; *State* v. *Gates*, 107 N. C., 832), and the like. It is not astonishing that defendants who have no meritorious ground of exception should clutch at shadowy nothings, but our courts have faithfully followed the letter and spirit of the legislation which favors trials upon the merits. As far back as *State* v. *Moses*, 13 N. C., 452 (at p. 464), the elder Ruffin, speaking of the Act (now *Code*, Sec. 1183) which provides that "No judgment shall be arrested by reason of any informality or refinement," says: "This law was certainly designed to uphold the execution of public justice by freeing the courts from those fetters of *form, technicality* and *refine-*

*ment* (italics his) which do not concern the substance of the charge and the proof to support it. Many of the sages of the law had before called nice objections of this sort a disease of the law and a reproach to the bench, and lamented that they were bound down to strict and precise precedents. . . . We think the legislature meant to disallow the whole of them and only require the *substance*, that is a direct averment of those *facts* and *circumstances* which *constitute the crime* to be set forth. It is to be remarked that the Act directs the court to proceed to judgment without regard to two things—one the form, the other refinement." This decision has been followed and cited time and again. In *State* v. *Smith*, 63 N. C., 234, the court says: "The Act of 1811 (now *Code*, Sec. 1183) has the almost universal approval of the bench and bar. It needs no higher endorsement than that of the late Chief Justice Ruffin (*State* v. *Moses*, 13 N. C., 452). . . . The Act has received a very liberal construction and its efficacy has reached and healed numerous defects in the substance as well as in the form of indictments. . . . It is evident that the courts have looked with no favor on technical objections, and the legislature has been moving in the same direction. The current is all one way, sweeping off by degrees "informalities and "refinements" until indeed a plain, intelligible and explicit statement of the charge is all that is now required."

"Ever since 1811 it has been the evident tendency," says Ashe, J., in *State* v. *Parker*, 81 N. C., 531, "of our courts as well as our law makers to strip criminal actions of the many refinements and useless technicalities with which they have been fettered by the common law, the adherence to which often resulted in the

obstruction of justice and the escape of malefactors from merited punishment." To the same purport, *State v. Kirkman*, 104 N. C., 911, at p. 912; *State v. Harris*, 106 N. C., 682, at p. 689 ; *State v. Haddock*, 109 N. C., 873, at p. 875; *State v. Shade*, 115 N. C., 757; *State v. Darden*, 117 N. C., 697; *State v. Neal*, 120 N. C., 613.

No error.