STATE OF NORTH CAROLINA v. DWAYNE ANTHONY SMITH, Defendant

No. COA02-1363

(Filed 6 January 2004)

**1. Kidnapping— indictment—unlawful removal—instruction too broad—plain error**

There was plain error where a kidnapping indictment alleged unlawful removal but the court's instructions were that the jury could find defendant guilty if he unlawfully confined, restrained, or removed the victim. The error likely tilted the scale in light of the jury's request for more instructions on kidnapping, the conflicting evidence on unlawful removal, and the stronger evidence of confinement or restraint.

**2. Kidnapping— indictment and instruction—begun in one county, ended in another**

There was no error in the denial of a defendant's request for an instruction that the State was required to prove that the kidnapping occurred in Wilson County, as alleged in the indictment. Kidnapping is an ongoing offense; while the State's evidence may have suggested that the offense began in Wake County, it ended in Wilson County when the victim regained her freedom. There was no risk that the jury could convict defendant of a different kidnapping.

**3. Criminal Law— absence of judge—harm must be shown**

The absence of the trial judge from the proceedings will not constitute reversible error unless the record shows harm to defendant.

Appeal by defendant from judgment entered 13 March 2002 by Judge Cy A. Grant, Sr. in Wilson County Superior Court. Heard in the Court of Appeals 21 August 2003.

*Attorney General Roy Cooper, by Assistant Attorney General Thomas B. Wood, for the State.*

*Daniel Shatz, for defendant-appellant.*

GEER, Judge

Defendant Dwayne Anthony Smith appeals from his convictions for second-degree kidnapping, assault inflicting serious injury, and

communicating threats. Because the trial court instructed the jury as to kidnapping theories not included in the indictment, we vacate defendant's second-degree kidnapping conviction and remand for a new trial. We find defendant's remaining assignments of error to be without merit.

### Facts

*A. The State's Evidence.*

The State's evidence tended to show the following. Kimberly Hare had been living with defendant since February 2000. On 14 January· 2001, at approximately 6:00 p.m., defendant and Hare met three male friends at a bar called the Sports Page in Knightdale, North Carolina. Hare had already drunk four or five beers that afternoon and probably drank another four beers at the bar. When Hare and defendant left the bar at 11:00 p.m., they had an argument in the parking lot about whether defendant was too drunk to drive. During the argument, defendant hit Hare in the face with his fist. Hare returned to the bar, told their friends and the bartender what had happened, and the bartender called the police. Defendant attempted to drag Hare out of the bar, but the police arrived, arrested him, and transported him to jail.

Hare decided not to return to defendant's house in Wilson, but instead went with their friends, including a man named Nick, to a house on Hodge Road in Wake County. After about thirty minutes, Hare went to bed. She was awakened by defendant who picked her up, despite her requests that he put her back down, and carried her naked to his truck. Hare admitted that she did not scream or try to rouse her friends to help her, even though they passed a man on the couch while defendant was carrying her to the truck. In the truck, defendant punched her in the face, called her a slut, and said that "[she] was going to die [that day] because he was going to kill [her]."

Defendant began driving towards their home in Wilson, repeatedly threatening to kill Hare. Defendant stopped at a convenience store and told Hare to call Nick to tell him that she was pressing rape charges against him the next day. When Hare hesitated to make the call, defendant struck her again. After the call, he pulled her back in the truck, started driving again, and hit her repeatedly in the face, causing her to bleed all over the seats of defendant's truck.

Defendant then drove the truck to another location where there was a path. He stopped the truck and sexually assaulted Hare with a capped beer bottle while threatening to bury her at the end of the

**STATE v. SMITH**

[162 N.C. App. 46 (2004)]

path. During the entire truck drive, Hare was forced to remain unclothed. At some point, Hare falsely told defendant that she was pregnant hoping that he would stop hitting her.

When they finally reached their home in Wilson, defendant demanded that Hare take a shower to wash off the blood and sexually assaulted her again. Defendant left to get a pregnancy test and swore that he would kill her if it came back negative. When defendant was gone, Hare got dressed, ran to a neighbor's house, and called 911. Defendant was arrested when he returned from the store.

Hare's sister-in-law, Jennifer Wilson, picked Hare up at the Wilson County magistrate's office. Wilson testified at trial that Hare had cuts, marks, and bruises all over her face and that she could hardly walk. Wilson also testified that when she saw defendant's truck, there was blood "everywhere," including on the windshield, door, door handle, seats, and steering wheel. A deputy sheriff photographed and also testified about Hare's injuries.

### B. Defendant's Evidence.

Defendant and his mother both testified. Defendant agreed that he and Hare had an argument in the parking lot of the Sports Page. Defendant claimed that he lightly pushed Hare and she went back into the bar. After he waited in the truck for a while and she did not return, he started to go back into the bar, but the police arrived and arrested him.

Defendant's mother, Diana Smith, testified that she received a call from Hare at about midnight, telling her that defendant was in the Wake County jail because they had been fighting. At approximately 3:00 a.m., defendant's mother bailed defendant out of jail. Defendant and his mother both testified that while she was driving him back to his truck, he "beeped" Hare on his Nextel two-way radio. Defendant's mother heard Hare respond and ask defendant to pick Hare up on Hodge Road. Defendant's mother testified that she told him that he should just go home and stay away from Hare. Defendant had his mother take him to his truck at the Sports Page and follow him to the house on Hodge Road.

Defendant testified that he knocked on the Hodge Road door, but got no answer. He entered the unlocked house and found Hare naked in bed with Nick. He picked her up, stood her on the floor, gathered her clothes off the floor, and put his coat around her. Defendant testified that Hare never indicated that she did not want to leave. While

arguing over the Sports Page incident, they walked outside, got into the truck, and left. Defendant's mother confirmed that she saw defendant and Hare walking to the truck side by side, that she heard them quarrelling, and that Hare was wearing a jacket. Defendant's mother followed them for a while, but then turned off the highway and headed home.

Defendant testified that as they drove towards Wilson, the argument became more heated and they started pushing and hitting each other. Hare demanded that he let her out of the truck. At one point, defendant stopped at a convenience store and told Hare to call someone to come pick her up. While Hare did make a phone call, she then got back into the truck and said, "Let's go." They drove to their home in Wilson with defendant stopping once to urinate. He claimed that Hare never tried to get away from him.

After they returned home, Hare told defendant that she was pregnant. He left to get a pregnancy test and when he returned, he was arrested. Defendant admitted hitting Hare at some point during the night, but denied ever threatening her life.

Defendant claimed that between the incident and the trial, he and Hare secretly saw each other often, including a trip to watch a race at Martinsville. The Wake County assault charges stemming from the argument in the Sports Page parking lot were dismissed when Hare failed to appear at numerous court dates.

Defendant was indicted with second-degree kidnapping, assault inflicting serious injury, and communicating threats. Defendant was tried at the 11 March 2002 regular criminal session of Wilson County Superior Court with Judge Cy A. Grant, Sr., presiding. The jury found defendant guilty of all three charges and the trial court sentenced defendant to a minimum of 29 and a maximum of 44 months.

I

[1] Defendant first assigns plain error to the trial court's instructions on the second-degree kidnapping charge, arguing that the instructions permitted the jury to convict defendant based on theories of kidnapping not alleged in the indictment. We agree.

The indictment charged that defendant had committed kidnapping by unlawfully removing Hare from one place to another:

[t]he defendant named above unlawfully, wilfully and feloniously did kidnap Kimberly Wilson Hare, a person who had attained the

age of 16 years, *by unlawfully removing [her]* from one place to another, without the victim's consent, and for the purpose of doing serious bodily injury to Kimberly Wilson Hare.

(Emphasis added) The jury instructions, however, permitted the jury to find defendant guilty of second-degree kidnapping if the State proved that defendant, without consent, "unlawfully confined a person or restrained a person or removed a person from one place to another." After the jury began deliberations, the foreperson sent a note to the judge stating, "We need for you to review the list of conditions for 2nd degree kidnapping." The judge repeated his original instructions, but also defined "restrained" more specifically as "restrict[ing] her freedom of movement."

Although the instruction given in this case parallels the statutory definition of second-degree kidnapping, *see* N.C. Gen. Stat. § 14-39(a) (2001), it varies significantly from the indictment. As a basis for finding kidnapping, the indictment only alleged "removing," while the instructions allowed the jury to convict based on "confining, restraining, or removing."

The Supreme Court has already held in *State v. Tucker*, 317 N.C. 532, 346 S.E.2d 417 (1986), that such a variance constitutes error. In *Tucker*, the indictment alleged that the defendant had kidnapped the victim by "removing her from one place to another," but the trial judge instructed the jury that it could find defendant guilty of kidnapping if it found that "the defendant unlawfully *restrained* [the victim.]" *Id.* at 537, 346 S.E.2d at 420 (emphasis original). The fact that the State's evidence supported the giving of the instruction was immaterial since the instruction was inconsistent with the indictment: " 'It is a well-established rule in this jurisdiction that it is error, generally prejudicial, for the trial judge to permit a jury to convict upon some abstract theory not supported by the bill of indictment.' " *Id.* at 537-38, 346 S.E.2d at 420 (quoting *State v. Taylor*, 301 N.C. 164, 170, 270 S.E.2d 409, 413 (1980)). The Court therefore concluded that "the trial court erred in its jury instructions on kidnapping." *Id.* at 538, 346 S.E.2d at 421.

In *State v. Lucas*, 353 N.C. 568, 590, 548 S.E.2d 712, 727 (2001), the Supreme Court expressly reaffirmed its holding in *Tucker*: "[W]e reaffirm our holding in *Tucker*, and we again adjure the trial courts to take particular care to ensure that the jury instructions [in kidnapping cases] are consistent with the theory presented in the indictment and with the evidence presented at trial." Although concluding that the

error was not prejudicial, the Court held in *Lucas* that "[b]ecause the indictment here charged confinement, the instructions given by the trial court based on the theory of removal were erroneous." *Id.* at 588, 548 S.E.2d at 726. *See also State v. Dammons*, 293 N.C. 263, 273, 237 S.E.2d 834, 841 (1977) (Instead of only alleging unlawful removal, "[h]ad the state desired to prosecute on the theory that defendant confined and restrained the victim by, perhaps, placing her in the trunk of the car, it should have so alleged by way of an additional count in the indictment.").

This Court addressed precisely the facts present here in *State v. Dominie*, 134 N.C. App. 445, 448-49, 518 S.E.2d 32, 34 (1999). This Court vacated the defendant's first-degree kidnapping convictions and remanded for a new trial when the indictment alleged only that the defendant unlawfully removed the victims, but the trial court instructed the jury that they could find defendant guilty of kidnapping if he unlawfully confined, restrained, or removed the victims.

Under *Tucker, Lucas, Dammons*, and *Dominie*, the trial court erred in instructing the jury that it could find defendant guilty of kidnapping if he unlawfully confined, restrained, or removed Hare when the indictment alleged only unlawful removal. Since defendant did not, however, object to the trial court's instructions, we must determine whether this error constituted plain error. "In deciding whether a defect in the jury instruction constitutes 'plain error,' the appellate court must examine the entire record and determine if the instructional error had a probable impact on the jury's finding of guilt." *State v. Odom*, 307 N.C. 655, 661, 300 S.E.2d 375, 378-79 (1983).

In *Tucker*, the Supreme Court found plain error when "[i]n light of the highly conflicting evidence . . . on the unlawful removal and restraint issues, we think the instructional error might have . . . tilted the scales and caused the jury to reach its verdict convicting the defendant." 317 N.C. at 540, 346 S.E.2d at 422 (internal quotation marks omitted). We believe the same is true here.

The question before this Court is whether the trial court's failure to limit the jury to considering whether defendant unlawfully removed Hare had a probable impact on the verdict. With respect to the question of removal, the evidence was in stark conflict. On the removal issue, the State offered only the testimony of Hare. While Hare testified that defendant removed her from the house on Hodge Road by physically carrying her to the truck despite her objections, she admitted that she made no attempt to seek help from her friends

even when passing someone on the couch. Defendant, on the other hand, offered not only his own testimony that Hare came with him voluntarily, but also presented corroborating testimony from his mother. Defendant's mother testified that she heard Hare ask her son, on his Nextel two-way radio, to pick her up on Hodge Road. She further testified that she followed her son to Hodge Road and, contrary to Hare's testimony, saw Hare walk unassisted with her son to his truck clothed in a jacket. In short, the evidence as to whether Hare consented to her removal from Hodge Road was highly conflicting.

Under the jury instructions, however, the jury did not have to decide who to believe because it could still find defendant guilty of kidnapping if he confined or restrained Hare, without her consent, for the purpose of doing serious bodily injury to her. "Restrained" was defined as "restrict[ing Hare's] freedom of movement." There is a considerable difference between finding that defendant removed Hare from one place to another without her consent and finding that defendant restricted Hare's freedom of movement without her consent for purposes of doing serious bodily injury.

In deciding whether the instructional error constituted plain error, the jury's question regarding the "conditions" for kidnapping is significant. It suggests that the precise wording of those conditions— which varied from the indictment—was important to the outcome of the case. *See State v. Brown*, 312 N.C. 237, 249, 321 S.E.2d 856, 863 (1984) (relying upon the jury's request for clarification as to the elements of kidnapping in finding plain error when the instructions on kidnapping differed from the theories alleged in the indictment). Here, in light of the jury's request, the conflicting evidence on removal, and the stronger evidence on confinement or restraint, we believe that the instructional error, as in *Tucker*, likely "tilted the scales" and resulted in the guilty verdict.

In support of its contention that the erroneous instruction did not constitute plain error, the State points to *State v. Gainey*, 355 N.C. 73, 94, 558 S.E.2d 463, 477, *cert. denied*, 537 U.S. 896, 154 L. Ed. 2d 165, 123 S. Ct. 182 (2002), *Lucas*, 353 N.C. at 573-74, 548 S.E.2d at 717, and *State v. Clinding*, 92 N.C. App. 555, 562, 374 S.E.2d 891, 895 (1989). As those opinions stress, however, in each instance, the evidence before the jury was not in conflict as to the theory charged in the indictment.

In *Gainey*, the jury instructions allowed a finding of kidnapping based on "restraint or removal," but the indictment relied only upon

confinement. The defendant, however, had admitted that he forced the victim at gunpoint into a car and that he later put the victim in the trunk, thus leading to the Supreme Court's conclusion that "[t]he evidence in the case *sub judice* is not highly conflicting." 355 N.C. at 94-95, 558 S.E.2d at 477. In *Lucas*, the indictment charged confinement, but the instructions allowed kidnapping based on removal. The Court distinguished *Tucker* because the evidence in *Lucas* was "compelling," including defendant's own testimony, that defendant, armed with a shotgun, accompanied his friend to the victim's home where his friend forced the victim into a car at gunpoint and that defendant then drove the car to a hotel. 353 N.C. at 588, 548 S.E.2d at 726. In *Clinding*, this Court found no prejudice when the trial court instructed as to restraint although the indictment alleged removal and confinement because of "overwhelming" evidence from five eyewitnesses and a confession from defendant establishing that the defendant at gunpoint forced five employees into a freezer. 92 N.C. App. at 562, 374 S.E.2d at 895.

*Tucker*, involving an indictment alleging unlawful removal and instructions discussing unlawful restraint, is more directly on point. In *Tucker*, as here, the two primary witnesses at trial were the victim and the defendant, who had been involved in a relationship. The victim claimed that, during an argument, the defendant would not allow her to leave his truck, transported her to a remote location, threatened her life, and sexually assaulted her. Defendant, however, testified that they engaged in consensual sex and that they were planning to elope on the night at issue. The victim's cousin and a doctor corroborated the victim's injuries, while defendant presented a witness who testified that he saw the victim and the defendant, on the day of the alleged kidnapping, sitting very close together.

The evidence in this case parallels that of *Tucker* and, as in *Tucker*, is highly conflicting with respect to the theory alleged in the indictment: whether defendant unlawfully removed the victim from one place to another. We therefore vacate defendant's conviction of second-degree kidnapping and remand for a new trial.

II

[2] Defendant also contends that the trial court erred by denying defendant's request to instruct the jury that the State was required to prove that the kidnapping occurred in Wilson County as alleged in the indictment. Because this issue may arise again, we address it and conclude that the trial court did not err.

Defendant relies solely on *State v. Cox*, 303 N.C. 75, 277 S.E.2d 376 (1981). In *Cox*, the indictment charged the defendants with rape in Pasquotank County, but the State offered evidence that the defendants may also have raped the victim in Virginia and Rocky Mount. Because "[i]t is a fundamental rule in the administration of criminal justice that a defendant must be convicted, if at all, of the particular offense charged on the bill of indictment," the Supreme Court held that the trial court erred in failing to charge the jury that they could only convict defendants of those rapes that occurred in Pasquotank County, as alleged in the indictment. *Id.* at 84-85, 277 S.E.2d at 382.

Unlike *Cox*, this case does not involve multiple possible offenses, but rather only one kidnapping. In contrast to rape, in which each act of intercourse is a separate offense, "kidnapping is an ongoing offense . . . ." *Lucas*, 353 N.C. at 589, 548 S.E.2d at 727. In this case, while the State's evidence may have suggested that the offense alleged in the indictment began at Hodge Road in Wake County, that offense ended in Wilson County when Hare regained her freedom. *See State v. White*, 127 N.C. App. 565, 571, 492 S.E.2d 48, 51 (1997) ("We therefore hold that the offense of kidnapping under N.C. Gen. Stat. § 14-39 is a single continuing offense, lasting from the time of the initial unlawful confinement, restraint or removal until the victim regains his or her free will."). The evidence thus did not vary from the indictment and, contrary to *Cox*, there is no risk that the jury could convict defendant of a kidnapping different from the one alleged in the indictment. This assignment of error is overruled.

III

**[3]** Defendant further contends that the trial court committed error by leaving the courtroom during a portion of the prosecutor's closing argument. In *State v. Arnold*, 314 N.C. 301, 333 S.E.2d 34 (1985), however, our Supreme Court held that "it is well established that the absence of the judge from the proceedings will not constitute reversible error unless the record shows that something occurred which would harm the defendant." *Id.* at 308, 333 S.E.2d at 38.

Since defendant's only claim of prejudice relates solely to his conviction for kidnapping, which we have vacated, and since the issue is not likely to recur during the new trial, we do not address this issue. For the same reason, we decline to address defendant's remaining assignment of error.

Conclusion

We conclude that there was no error with respect to defendant's conviction for assault inflicting serious injury and for communicating threats. For the reasons stated above, defendant is entitled to a new trial on the charge of second-degree kidnapping.

New Trial.

Judges McGEE and BRYANT concur.