IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-1067

Filed 5 November 2024

Davidson County, Nos. 22 CRS 1486, 266441, 266015

STATE OF NORTH CAROLINA

v.

DERRICK LAVONTA LITTLE

Appeal by Defendant from judgments entered 21 April 2023 by Judge Lori I. Hamilton in Davidson County Superior Court. Heard in the Court of Appeals 13 August 2024.

> *Attorney General Joshua H. Stein, by Assistant Attorney General Kellie E. Army, for the State.*
>
> *Appellate Defender Glenn Gerding, by Assistant Appellate Defender Anne M. Gomez, for the Defendant.*

WOOD, Judge.

Derrick Lavonta Little ("Defendant") appeals from judgments entered following a jury verdict of guilty for possession of a firearm by felon and misdemeanor child abuse and his guilty plea to having obtained habitual felon status. On appeal, Defendant challenges the sufficiency of the evidence for a conviction of possession of a firearm by felon, the use of jury instructions on a theory that was not charged in the indictment, and that the jury instructions created a fatally ambiguous verdict. After careful review, we find no error in Defendant's conviction of possession of a

firearm by felon; however, we remand this matter for a new trial on the charge of misdemeanor child abuse.

## I.    Factual and Procedural Background

In August 2022, Defendant, Jennifer Crook and their fifteen-year-old son, Trey[1], were living in an apartment on Burgin Street in Lexington with Defendant's niece, Keyasha Kirkland, the "main renter" of the apartment, her boyfriend and their five children.

Trey often visited his girlfriend and her family. He had previously stayed with them for a few weeks when he ran away from home. On 10 August 2022, Trey was invited to accompany his girlfriend's family to the trampoline park for the younger son's birthday. He attended with his parents' permission and at the end of the event Trey's parents came to his girlfriend's home to pick him up.

When Defendant and Ms. Crook arrived at the home, Trey, his girlfriend, and the girlfriend's father, Mr. Eggleston, went out to meet them. Initially the greeting was friendly but then Defendant noticed that Trey was wearing his shirt. Defendant walked back to his car and returned with a pair of needle-nose pliers. Upon returning to the group, Defendant used the pliers to grab and twist the top of Trey's chest for approximately a minute. Trey began to cry and said it hurt. Defendant quietly

---

[1] Pseudonyms have been used to protect the juvenile's identity.

responded, "It can't hurt because I can't feel it." Mr. Eggleston reported that he was too shocked to intervene immediately before Defendant and his family got in their car and left.

The following day, two police officers knocked on Mr. Eggleston's door looking for Trey who had been reported missing by Defendant. Mr. Eggleston told the police that Trey had not been there that morning, but then he reported to the officers the incident from the night before. He also provided a written statement about his recollections.

Officers Dean and Lang were eventually able to locate Trey in Washington Park sleeping on a picnic table. The officers reported that it looked like Trey had not slept all night and had a "pretty tough time." Trey showed the officers his chest and back. Officer Lang recalled that it looked like he had been in some type of altercation with marks in several different locations that looked recent, but he could not recall if there were marks consistent with pliers being used on his chest.

The officers took Trey to the Lexington Police Department and contacted the Department of Social Services ("DSS"). The officers charged Defendant and Ms. Crook with child abuse. The officers then called Defendant and Ms. Crook, and they came to the police department where they were arrested. Defendant made a statement:

> I, Derrick Little, want to make the following statement. Because of [Trey's] size, he thinks he can buck up and push people around. I grabbed my multi-tool pair of pliers and grabbed [Trey's] shirt as a joke. I did not touch any skin and I did not make any contact with [Trey]. [Trey] did not yelp or scream when I grabbed his T-shirt so I know I did not touch any skin. We passed [Trey] this morning as we were taking my niece to work. We did not turn around or stop because my niece was going to be late for work. When we came back through where he was walking, we did not see him and we called the police. [Trey] is always calling me weak and small and tells me to fight him like a man. I've never laid my hand on [Trey].

Following Defendant's arrest for child abuse, Child Protective Services ("CPS") conducted a visit to the home. According to the CPS worker Ms. Kirkland, Defendant's niece and the "main renter" lived on the second floor with her boyfriend and five children while Defendant, Ms. Crook, and Trey lived on the first floor. The CPS worker interviewed two of Ms. Kirkland's children downstairs in the large open living room. During the interview Ms. Kirkland's six-year-old daughter Kayley[2] pulled a silver gun out from under the couch and pointed it at her brother laughing. The CPS worker sternly told her to put the gun away, which she did for a short time before pulling it back out. The CPS worker told her again to put it back, then called the police to come and secure the weapon. The CPS worker informed Ms. Kirkland that the police were on the way to secure the gun. The CPS worker then heard Ms.

---

[2] Pseudonyms have been used to protect the juvenile's identity.

Kirkland call Defendant on speaker phone and say, "a gun was just found" and police were coming to check if it was real. Defendant responded "okay."

The police officers removed a .32-caliber Smith and Wesson revolver from under the couch, verified that it was real but unloaded, and placed it in an evidence bag in their vehicle. Shortly after the officers arrived, Defendant arrived at the home as well. An officer approached Defendant and asked, "Where did you get the firearm?" Defendant responded, "I found it." No other occupant of the home claimed ownership of the gun. The officers confirmed that Defendant was a convicted felon and placed him under arrest for being a felon in possession of a firearm. The gun was not tested for fingerprints or DNA because, according to the officers, it was not "standard practice;" however it was determined that the gun was not stolen nor was it registered to anyone.

Defendant's matter came on for trial in Davidson County Superior Court on 17 April 2023 for one count of possession of a firearm by felon and two counts of misdemeanor child abuse. The first count of misdemeanor child abuse was for inflicting physical injury on Trey. The second count was for creating and allowing a substantial risk of physical injury to Kaley by leaving a gun unsecured and under a sofa where children had access. At trial, in addition to the testimony recounted above, the State also introduced evidence of Defendant's 2011 guilty plea to felony possession with intent to sell and deliver cocaine in Davidson County.

On 20 April 2023, the jury found Defendant guilty of possession of firearm by felon and misdemeanor child abuse of Trey, and not guilty of misdemeanor child abuse of Kayley. Defendant pleaded guilty to having attained habitual felon status and was sentenced to two consecutive sentences of 67-93 months of imprisonment in the Department of Adult Correction and 150 days in the custody of the Misdemeanor Confinement Program. Defendant gave oral notice of appeal at sentencing on 20 April 2022.

## II. Analysis

Defendant raises three issues on appeal: (1) whether the evidence is sufficient to support a conviction of possession of a firearm by felon; (2) whether the jury instructions for misdemeanor child abuse permitted the jury to convict Defendant on a theory not supported by the indictment; and (3) whether there was jury unanimity for the conviction on misdemeanor child abuse.

### A. Sufficiency of the Evidence

Defendant first argues the trial court erred by denying his motion to dismiss, alleging that the State did not present sufficient evidence showing Defendant had actual or constructive possession of the firearm found under the couch. When considering a motion to dismiss for insufficient evidence, the trial court determines "whether there is substantial evidence of each essential element of the crime and that the defendant is the perpetrator." *State v. Winkler*, 368 N.C. 572, 574, 780 S.E.2d 824,

826 (2015) (internal citation and quotations omitted).

> Whether evidence presented constitutes substantial evidence is a question of law for the court and is reviewed *de novo*. Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. In reviewing the denial of a motion to dismiss for insufficiency of the evidence, we must view the evidence in the light most favorable to the State, giving the State the benefit of all reasonable inferences.

*State v. Glisson,* 251 N.C. App. 844, 847-48, 796 S.E.2d 124, 127-28 (2017) (internal citations and quotations omitted). "If the evidence is sufficient only to raise a suspicion or conjecture as to either the commission of the offense or the identity of the defendant as the perpetrator of it, the motion should be allowed." *State v. Scott*, 356 N.C. 591, 595, 573 S.E.2d 866, 868 (2002). "Any contradictions or discrepancies in the evidence are for the jury to resolve and do not warrant dismissal." *State v. Olson,* 330 N.C. 557, 564, 411 S.E.2d 592, 595 (1992) (citation omitted).

Defendant was charged pursuant to N.C. Gen. Stat. §14-415.1(a), possession of a firearm by a convicted felon, which states, it is "unlawful for any person who has been convicted of a felony to purchase, own, possess, or have in his custody, care, or control any firearm[.]" Therefore, to establish the crime of possession of a firearm by felon, the State must prove: "(1) defendant was previously convicted of a felony; and (2) thereafter possessed a firearm." *State v. Wood*, 185 N.C. App. 227, 235, 647 S.E.2d 679, 686 (2007).

Defendant's status as a felon is undisputed. Therefore, the issue here is

whether Defendant had 'possession' of the firearm in question.

> Possession of a firearm may be actual or constructive. Actual possession requires that the defendant have physical or personal custody of the firearm. In contrast, the defendant has constructive possession of the firearm when the weapon is not in the defendant's physical custody, but the defendant is aware of its presence and has both the power and intent to control its disposition or use. When the defendant does not have exclusive possession of the location where the firearm is found, the State is required to show other incriminating circumstances in order to establish constructive possession. Constructive possession depends on the totality of the circumstances in each case.

*State v. Taylor*, 203 N.C. App. 448, 459, 691 S.E.2d 755, 764 (2010) (internal citations and quotations omitted). When reviewing the "totality of the circumstances," constructive possession cases often include evidence that the defendant had a specific or unique connection to the place where the items were found and evidence that the defendant behaved suspiciously or made incriminating statements admitting involvement. *State v. Ferguson,* 204 N.C.App. 451, 460, 694 S.E.2d 470, 477 (2010). Unless the accused has exclusive possession of the place where the contraband is located, the State must show "other incriminating circumstances before constructive possession may be inferred." *State v. Davis*, 325 N.C. 693, 697, 386 S.E.2d 187, 190 (1989).

In this case, Defendant was not present when the gun was found. However, it was found in his home on the floor of the home where he and his family resided. When

the adult present in the home at the time the gun was found was told of its presence, she immediately called Defendant, her uncle, rather than her boyfriend or Defendant's girlfriend who also resided on that floor. Immediately after the call, Defendant returned to the home. When asked by police where he got the gun, he responded, "I found it." The officer testified that the exchange led him to believe that Defendant owned the gun. The gun was not registered and no one else in the home claimed any knowledge of it.

While the location of the gun gives rise to access and the phone calls concerning the gun may be regarded as suspicious behavior, those in isolation would not support a finding of constructive possession. However, Defendant's statement "I found it" may be interpreted as an acknowledgement of possession and this Court has held that "acknowledg[ing] his possession of the gun in [a] statement, [ ] effectively disposes of his argument that there is no evidence of possession." *State v. Jones*, 161 N.C. App. 615, 624, 589 S.E.2d 374, 379 (2003). Considering the evidence in the light most favorable to the State, we conclude the evidence is sufficient to permit a reasonable jury to infer that Defendant possessed the firearm in violation of N.C. Gen. Stat. § 14-415.1(a).

## B. **Jury Instructions**

Defendant's argument that the jury instructions for misdemeanor child abuse permitted the jury to convict Defendant on a theory not supported by the indictment is also reviewed *de novo*, as our Court reviews a trial court's decisions regarding jury

instructions *de novo.* " 'The prime purpose of a court's charge to the jury is the clarification of issues, the elimination of extraneous matters, and a declaration and an application of the law arising on the evidence.' " *State v. Smith*, 206 N.C. App. 404, 416, 696 S.E.2d 904, 911 (2010) (internal citations and quotations omitted).

According to our Supreme Court:

> It is clearly the rule in this jurisdiction that the trial court should not give instructions which present to the jury possible theories of conviction which are either not supported by the evidence or not charged in the bill of indictment. . . . [W]here the indictment for a crime alleges a theory of the crime, the State is held to proof of that theory and the jury is only allowed to convict on that theory. Prejudicial error occurs when . . . the judge's instructions allow the jury to convict upon some abstract theory supported by the evidence but not alleged in the bill of indictment.

*State v. Taylor*, 304 N.C. 249, 274-75, 283 S.E.2d 761, 777-78 (1981).

The Supreme Court reiterated this holding in *State v. Tucker* saying "It is a well-established rule in this jurisdiction that it is error, generally prejudicial, for the trial judge to permit a jury to convict upon some abstract theory not supported by the bill of indictment. *State v. Tucker*, 317 N.C. 532, 537-38, 346 S.E.2d 417, 420 (1986). The Supreme Court expressly reaffirmed this holding in *Lucas:* "[W]e reaffirm our holding in *Tucker,* and we again adjure the trial courts to take particular care to ensure that the jury instructions are consistent with the theory presented in the indictment and with the evidence presented at trial." *State v. Lucas,* 353 N.C. 568, 590, 548 S.E.2d 712, 727 (2001) (rev'd on other grounds).

Following the precedent set forth in *Tucker*, this Court has determined error occurred when jury instructions were inconsistent with the charges in the indictment even if the instructions were consistent with evidence. *State v. Smith*, 162 N.C. App. 46, 50, 589 S.E.2d 739, 742 (2004); *see also, State v. Dominie,* 134 N.C. App. 445, 449, 518 S.E.2d 32, 34 (1999).

In the case at hand, Defendant was charged under N.C. Gen. Stat. § 14-318.2(a), which reads in its entirety:

> [a]ny parent of a child less than 16 years of age, or any other person providing care to or supervision of such child, who inflicts physical injury, or who allows physical injury to be inflicted, or who creates or allows to be created a substantial risk of physical injury, upon or to such child by other than accidental means is guilty of the Class A1 misdemeanor of child abuse.

Our Supreme Court has set clear president concerning N.C. Gen. Stat. § 14-318.2 that we must follow. The Court has stated that the statute sets forth separate offenses stating N.C. Gen. Stat.14-318.2(a) "provides for three separate offences: If the parent by other than accidental means (1) inflicts physical injury upon the child, (2) allows physical injury to be inflicted upon the child, or (3) creates or allows to be created a substantial risk of physical injury." *State v. Fredell*, 283 N.C. 242, 244, 195 S.E.2d 300, 302 (1973). "Clearly, by the enactment of [N.C. Gen. Stat.] § 14-318.2 the General Assembly intended to provide for three separate and independent offenses, none dependent on the other." *Id.* at 247, 195 S.E.2d at 303.

Defendant was properly indicted for misdemeanor child abuse, and the indictment is facially valid. In Count I of the indictment, Defendant was charged with misdemeanor child abuse of Trey as follows:

> THE JURORS FOR THE STATE upon their oath present that . . . the defendant named above unlawfully and willfully did, being the parent of [Trey], who was a child less than 16 years of age, ***inflict physical injury***, bruising and abrasions, on that child. The physical injury was inflicted by other than accidental means[.]

(emphasis added). There is no mention, in the first indictment concerning Trey, of the other two separate offenses of allowing physical injury to be inflicted upon the child or creating or allowing to be created a substantial risk of physical injury. Defendant was indicted for creating a substantial risk in regard to Kaley but the prosecutor chose not to include that count in regard to Trey.

At the end of the second day of the trial, the State asked the trial court for a jury instruction that would "include all of the ways, all of the specific injury language there. So specifically that . . . the defendant 'inflicted physical injury upon or allowed physical injury to be inflicted upon or created or allowed substantial risk of physical injury.' " The State requested the "substantial risk" language because Trey was not going to testify and the State "d[id]n't know [if it was] going to put on any direct evidence of physical injury[.]"

Defense counsel objected and argued the instructions should match the indictment. "The defense was put on notice to defend against allegations specifically

that he inflicted physical injuries, specifically bruising and abrasions on that child. We don't get to move the goal posts mid trial because the evidence doesn't support what's on [the prosecutor's] indictment."

The trial court initially stated it would grant Defendant's request and deny the State's request for the jury instruction. However, prior to closing arguments the trial court changed course and granted the State's jury instruction request stating, "I'm inclined to grant the State's request to leave in . . . the legal theory that the defendant also created a substantial risk of injury. And we will note your exception to the Court's ruling."

During closing arguments, the prosecutor informed the jury that on the charge of misdemeanor child abuse the State had to prove "that the defendant inflicted physical injury or created a substantial risk of inflicting physical injury." In its charge to the jury, the trial court instructed the jury that on the misdemeanor charge of child abuse against Trey the State had to prove "the defendant inflicted physical injury upon the child and/or created a substantial risk of physical injury to the child other than by accidental means." The trial court provided the jury with the directive that they could find Defendant guilty of misdemeanor child abuse of Trey on two separate and distinct theories: (1) if they found 'physical injury' which was the charge included in the indictment or also (2) if they found only that Defendant created 'substantial risk' of physical injury, a separate offense that was not charged in the original indictment.

The jury charge here is analogous to those at issue in *Tucker* as well as its progeny. *See* 317 N.C. 532, 346 S.E.2d 417 (1986); *See also, State v. Lucas,* 353 N.C. 568, 548 S.E.2d 712 (2001)(rev'd on other grounds); *State v. Smith,* 162 N.C. App. 46, 589 S.E.2d 739 (2004); *State v. Dominie,* 134 N.C. App. 445, 518 S.E.2d 32 (1999). The defendant in *Tucker* was indicted for kidnapping, which by statute applies to a person who "unlawfully confine[s], restrain[s], or remove[s] from one place to another . . . ." However, his indictment was for kidnapping "by unlawfully *removing her from one place to another*. . . ." *State v. Tucker*, 317 N.C. 532, 536, 346 S.E.2d 417, 420 (1986). When the judge instructed the jury that they could find defendant guilty if they found, "that the defendant unlawfully *restrained* [the victim]" the Supreme Court reversed the conviction stating "[a]lthough the state's evidence supported Judge['s] [ ] instruction, the indictment does not. 'It is a well-established rule in this jurisdiction that it is error, generally prejudicial, for the trial judge to permit a jury to convict upon some abstract theory not supported by the bill of indictment.'" *State v. Tucker*, 317 N.C. 532, 537-38, 346 S.E.2d 417, 420 (1986) (internal citations omitted).

In this case the indictment was not facially invalid, it clearly stated the crime was committed by "inflict[ing] physical injury, bruising and abrasions, on that child . . . by other than accidental means." As soon as the prosecution moved to include jury instructions for another crime, one that our Supreme Court has previously held is a "completely separate offense," defense counsel objected. When the trial court allowed

the additional instruction, it again noted defense counsel's objection. *State v. Fredell*, 283 N.C. 242, 247, 195 S.E.2d 300, 303 (1973). While the evidence in this case may have supported the trial court's instruction, as it did in *Tucker*, it was error for the trial court to instruct the jury on a theory clearly not support by the bill of indictment. *State v. Tucker*, 317 N.C. 532, 537-38, 346 S.E.2d 417, 420 (1986).

While inflicting physical injury to a child and creating or allowing to be created a substantial risk of physical injury to a child cannot be considered completely distinct from one another, our Supreme Court has created definitive precedent that they are two separate and independent charges to be indicted. *State v. Fredell*, 283 N.C. 242, 247, 195 S.E.2d 300, 303 (1973). The State did not include the offense of misdemeanor child abuse by creating a substantial risk of physical injury to the child in the indictment against Defendant. Although the evidence presented at trial alleged serious risk of harm to a minor and may have supported the offense, had the State desired to prosecute Defendant on the theory, it should have so alleged in the indictment. The onus is on the State to prove the elements necessary for the charge of misdemeanor child abuse. *State v. Watkins*, 247 N.C. App. 391, 395, 785 S.E.2d 175, 177 (2016). The State had the opportunity to include the offense of misdemeanor child abuse by creating a substantial risk of physical injury to the child in the indictment or to have Trey testify at trial to any injury he received to provide direct evidence of physical injury as alleged in the indictment, but it did neither.

The trial judge committed prejudicial error when it instructed the jury that

Defendant could be convicted upon a theory or charge not contained in indictment. *State v. Dominie*, 134 N.C. App. 445, 449, 518 S.E.2d 32, 34 (1999). Under *State v. Taylor,* "Prejudicial error occurs when . . . the judge's instructions allow the jury to convict upon some abstract theory supported by the evidence but not alleged in the bill of indictment." *State v. Taylor*, 304 N.C. 249, 274-75, 283 S.E.2d 761, 777-78 (1981). Because Defendant was prejudiced by the trial court's error, Defendant is entitled to a new trial. We reverse Defendant's conviction for misdemeanor child abuse and remand for a new trial on this charge.

## C. **Jury Unanimity**

Defendant next argues that the trial court's jury instruction on misdemeanor child abuse of Trey resulted in a fatally ambiguous verdict. Because we have ordered a new trial and as Defendant's remaining argument is directed to an issue which may not occur on retrial, we decline to address it. *State v. Tucker*, 317 N.C. 532, 545, 346 S.E.2d 417, 424 (1986).

## III. **Conclusion**

For the foregoing reasons, we find no error in Defendant's conviction of possession of a firearm by felon. Because the trial court erred in instructing the jury on a theory of the crime not charged in the indictment, we reverse Defendant's conviction for misdemeanor child abuse and remand to the trial court for a new trial on the charge of misdemeanor child abuse.

NO ERROR IN PART; REVERSED IN PART AND REMANDED FOR NEW TRIAL.

Judge ZACHARY concurs.

Judge CARPENTER concurs by separate opinion.

No. COA23-1067 – *State v. Little*

CARPENTER, Judge, concurring.

I fully join my colleagues' analysis of the motion to dismiss the possession of a firearm by a felon charge. Concerning Defendant's misdemeanor child abuse conviction as to Trey, I also concur because this Court lacks jurisdiction to rule contrary to a decision of the North Carolina Supreme Court.

Nonetheless, I am compelled to write separately because I believe the result on the child abuse issue turns on a matter of form rather than substance, which does not favor justice and allows a defendant to escape merited punishment. *See State v. Stewart*, 386 N.C. 237, 241, 900 S.E.2d 652, 656 (2024) (quoting *State v. Sturdivant*, 304 N.C. 293, 311, 283 S.E.2d 719, 731 (1981)).

Initially, I note that the majority's facts and procedural history are well-supported by the record, and I incorporate them herein. One passage, in particular, warrants repeating:

> When Defendant and Ms. Crook arrived at the home, Trey, his girlfriend, and the girlfriend's father, Mr. Eggleston, went out to meet them. Initially the greeting was friendly but then Defendant noticed that Trey was wearing his shirt. Defendant walked back to his car and returned with a pair of needle-nose pliers. Upon returning to the group, Defendant used the pliers to grab and twist the top of Trey's chest for approximately a minute. Trey began to cry and said it hurt. Defendant quietly responded, "It can't hurt because I can't feel it."

Additionally, the majority's misdemeanor child abuse analysis is well-supported by precedent which accurately reflected the law at the time those cases were decided by our appellate courts, and likely where it stands today.

Nevertheless, our state's highest court recently released two opinions clarifying our caselaw concerning sufficiency of indictments; I believe the new clarity in that area may signal a sea-change in how we evaluate indictment-related arguments moving forward. *See State v. Singleton*, 386 N.C. 183, 900 S.E.2d 802 (2024); *State v. Stewart*, 386 N.C. 237, 900 S.E.2d 652 (2024). I write separately to discuss my view of the ramifications of these recent decisions and how I would apply them in this case, but for an earlier decision, *State v. Fredell*, 283 N.C. 242, 195 S.E.2d 300 (1973).

In *Singleton*, the North Carolina Supreme Court held that so long as a crime against the laws and people of North Carolina was alleged, defects in indictments do not deprive the trial court of jurisdiction. 386 N.C. at 184–85, 900 S.E.2d at 805. Therefore, a defendant challenging an indictment as defective must show that the indictment contained a statutory or constitutional defect and that such error was prejudicial. *Id.* at 185, 900 S.E.2d at 805. In reaching its decision, the Court dispensed with overly technical, common-law jurisprudence in favor of a "common sense approach to the law," *id.* at 185, 900 S.E.2d at 805, noting "'[t]he practical sense of the age demands' that technicalities should not carry the day for defendants who argue form over substance in our indictment jurisprudence, because defendants are

seldom prejudiced by mistakes in pleadings." *Id.* at 214–15, 900 S.E.2d at 824 (quoting *State v. Hester*, 122 N.C. 1047, 1050, 29 S.E. 380 (1898)).

Similarly in *Stewart*, applying the rules clarified in *Singleton*, the Court determined that an indictment for sexual battery, which alleged the sexual contact was "without [victim's] consent" rather than "by force," was not fatally flawed because its language implied the use of force and adequately noticed the defendant of the charge against him. *Stewart*, 386 N.C. at 242, 900 S.E.2d at 656. The Court soundly rejected the defendant's argument that the trial court was deprived of subject-matter jurisdiction because the indictment omitted an essential element of sexual battery, observing that the "[d]efendant's argument here represents a regression to the era of technical pleading rules from which this State's jurisprudence has long since departed. As this Court has written time and again, such rules tend to emphasize form over substance, undermining justice." *Id.* at 242, 800 S.E.2d at 656.

Granted, the issue before us today is not identical to the issues in *Singleton* or *Stewart*—no party disputes the facial validity of Defendant's indictment. Although the holdings of *Singleton* and *Stewart* are limited to clarifying which indictment defects are jurisdictional, in my view, an assertion of instructional overreach based on the explicit inclusion or omission of indictment language is the flip side of the same coin.

The thrust of *Singleton* and *Stewart* seems to be, indictment-related arguments which unduly elevate form over substance, thus undermining justice or

merited punishment, will not stand, provided the defendant was sufficiently noticed of charges to prepare a defense. And by logical extension, if there is any perceived ambiguity in the indictment, the onus is on the defendant to move for a bill of particulars. But for a prior North Carolina Supreme Court opinion interpreting our misdemeanor child abuse statute, my vote would have been to affirm Defendant's misdemeanor child abuse conviction.

Turning to the instant case, Defendant was properly indicted for misdemeanor child abuse, and the indictment is facially valid. In Count I of the indictment, Defendant was charged with misdemeanor child abuse of Trey as follows:

> THE JURORS FOR THE STATE upon their oath present that . . . the defendant named above unlawfully and willfully did, being the parent of [Trey], who was a child less than 16 years of age, inflict physical injury, bruising and abrasions, on that child. The physical injury was inflicted by other than accidental means[.]

My analysis begins with two premises: (1) "Generally, the purposes of an indictment 'are to identify clearly the crime being charged, thereby putting the accused on reasonable notice to defend against it and prepare for trial, and to protect the accused from being jeopardized by the State more than once for the same crime.'" *Stewart*, 386 N.C. at 241, 900 S.E.2d at 655 (quoting *Sturdivant*, 304 N.C. at 311, 283 S.E.2d at 731); and (2), "[a] trial court is required to instruct on every substantive feature of the case, even in the absence of a request for such an instruction; however, the trial court need not instruct the jury with any greater particularity than is

4

necessary to enable the jury to apply the law to the substantive features of the case arising on the evidence when . . . the defendant makes no request for additional instructions." *State v. Stough*, 233 N.C. App. 240, 758 S.E.2d 706 (2014) (cleaned up).

Next, I examine the plain language of the applicable statute. Defendant was charged under N.C. Gen. Stat. § 14-318.2(a), which reads:

> [a]ny parent of a child less than 16 years of age, or any other person providing care to or supervision of such child, who inflicts physical injury, or who allows physical injury to be inflicted, or who creates or allows to be created a substantial risk of physical injury, upon or to such child by other than accidental means is guilty of the Class A1 misdemeanor of child abuse.

Based on a plain reading of the text, our misdemeanor child abuse statute provides three alternative theories by which one may commit the single crime of misdemeanor child abuse—not dissimilar in construction to our kidnapping or domestic violence statutes, for example.

Fifty years ago, however, our Supreme Court interpreted this statute as setting forth three distinct crimes: "Clearly, by the enactment of [Gen. Stat.] § 14-318.2 the General Assembly intended to provide for three separate and independent offenses, none dependent on the other." *Fredell*, 283 N.C. at 247, 195 S.E.2d at 303. Although not the holding of *Fredell*, this statement is unambiguous and appears to remain in force. Bound by *Fredell,* then, I must join the majority's conclusion that the trial court erred "when it instructed the jury that Defendant could be convicted upon a

5

theory or charge not supported by the bill of indictment," because the indictment only alleged infliction of physical injury.

But this result seems to turn on an elevation of form over substance so seemingly disfavored in the recent *Singleton* and *Stewart* decisions. Substantial evidence shows Defendant publicly used a pair of needle-nose pliers as a form of punishment on Trey in front of several witnesses. Such behavior is not only reprehensible, or "shocking" as Mr. Eggleston testified, it is illegal.

Here, the trial court chose to instruct the jury on the substantive features of the case arising on the evidence, as I likely would have. Even if the trial court erred, I struggle to envision prejudice given the close correlation between the two theories and the weight of the evidence. Absent contrary precedent, I would be inclined to agree with the prosecution and ultimately the trial court below, that a true bill of indictment for misdemeanor child abuse notices a defendant to prepare a defense against misdemeanor child abuse, by any of the three theories set forth in the statute.

Under this construction, a trial judge would never face the conundrum presented to the trial court here: Should I instruct on the narrow *theory* of the crime alleged in the indictment, even in the absence of a motion for a bill of particulars, or should I instruct on the substantive features of the *case* arising on the evidence? Furthermore, under this construction a trial court's decision to instruct on one or more theories of the crime arising from the evidence could hardly be said to be an "abstract theory not supported by the bill of indictment." *See State v. Tucker*, 317

6

N.C. 532, 537–38, 346 S.E.2d 417, 420 (1986) ("It is a well-established rule in this jurisdiction that it is error, generally prejudicial, for the trial judge to permit a jury to convict upon some abstract theory not supported by the bill of indictment.").

In sum, I fully join the majority's analysis of the motion to dismiss. Nevertheless, it is difficult to rationalize how this bill of indictment noticed Defendant to prepare a misdemeanor child abuse defense against the infliction of physical injury theory, *without* placing him on notice to defend against the creation of a substantial risk of physical injury theory. *See* N.C. Gen. Stat. § 14-318.2(a). Bound by *Fredell*, however, I concur. *See* 283 N.C. at 247, 195 S.E.2d at 303.